## RICE v. SMITH, County Judge, AND DISHON.

1. PARTIES. Persons who are citizens, voters and tax payers of a county may be parties plaintiff in an action to restrain by injunction the expenditures of county moneys, by the county judge, in the erection of a court house at a place which is not the county seat of the county.

2. INJUNCTION. Where the location of a county seat was in controversy, and the county judge proposed to expend a large sum of money in the erection of a court house at one of the towns claiming the same, and was restrained from so doing by injunction, and it further appeared that when a mandate of the court which had been directed to such judge should be obeyed, that the county seat would be established at another place; Held, that the court did not err in refusing to dissolve the injunction.

3. WHO MAY RECOVER ON A BOND. When an injunction bond names but one of two defendants as obligee, the defendant not named may maintain an action on the bond, under section 1693 of the Code of 1851.

4. DISCRETION OF THE COUNTY JUDGE. The county judge has discretionary authority to erect public buildings, but this discretion may be restrained when abused.

5. The State of Iowa, ex rel. Rice v. Smith, County Judge, ante, considered with reference to this case, and affirmed.

*Appeal from Marshall District Court.*

THURSDAY, NOVEMBER 3.

The petition was for an injunction to stay the building of a court house in accordance with a contract made, and the issuance of county bonds therefor.

The petitioners, Wells S. Rice, G. W. Woodbury, Reuben

H. Webster, Henry Anson, and H. C. Henderson, represent that they are citizens, voters, and tax-payers of the county of Marshall, and resident in, and property holders in the town of Marshall, in said county, and largely interested in the matters set forth in the bill.

They represent that in accordance with a petition presented to the county judge, in June, 1857, praying therefor, he ordered an election to be holden in April, 1858, upon the question of the relocation of the county seat at the town of Marshall.   That a vote was taken in pursuance of the law, and that the vote and election resulted in favor of Marshall; that the county judge took to his assistance two justices of the peace, who, with himself, were in favor of the town of Marietta, to canvass the vote, and they, for certain informalities, rejecting the returns from the townships of Marion, Le Grand, and Greencastle, declared the result to be in favor of the town of Marietta; that at the April term of the District Court, A. D. 1858, an information was filed praying that a writ of *mandamus* might be issued, commanding the said judge to take to his assistance two justices of the peace, and to re-canvass the votes of the said election, and in such canvass to count the returns from the three townships which had been rejected, and to declare the result accordingly, and that such proceedings were had in the cause that the said court ordered that a peremptory writ of *mandamus* issue, commanding as above stated ; that the defendant appealed from that judgment to the Supreme Court, but the same was affirmed at the December term, A. D. 1858, and a writ of *procedendo* was issued, and in accordance therewith, a peremptory writ of *mandamus*.

The petitioners further represent, that afterwards, on the 6th January, A. D. 1859, the county judge, pretending to act under the said peremptory writ, called to his assistance two justices of the peace, and pretended to canvass the returns of the said April election, but instead of obeying the said writ, they again rejected the returns of the said townships of Marion, Le Grand and Greencastle, and again

declared the result in favor of the town of Marietta; and the petitioners aver that at the time of the said pretended canvass, the peremptory writ had not been legally served upon the county judge, but a service by reading and copy had been acknowledged by him on the peremptory writ; and they say that on the 10th January, 1859, a legal service was made by the sheriff, leaving the writ with the judge, and indorsing a return upon a copy thereof.

The complainants farther state, that on the 11th January, 1859, the said judge took to his assistance two other justices of the peace, thus forming a board of canvassers, and in obedience to the writ, they canvassed the votes of the said election of April 1858, and in accordance with the result thereof, declared that a majority of the votes cast were in favor of the town of Marshall, and that this result was duly entered in the proper election book with a declaration that the town of Marshall is the county seat of the said county.

The complainants farther represent that, notwithstanding the above proceedings, the county judge, on the 14th January, A. D. 1859, entered into a private contract with Wm. Dishon, a citizen of Marietta, for the erection of a court house at Marietta, at a cost to the county of twenty-six thousand dollars, as principal, and at least seven thousand dollars as interest to accrue according to the terms of the contract, which building was to be completed within twenty months from date thereof, and that, according to the statement of the contract, the judge had issued, in advance, twenty-six bonds of the county, for the sum of one thousand dollars each, which fall due in different sums (stated in the bill) in January of the years 1860, 1861, 1862 and 1863, with the accruing interest at ten per cent; and that this will be a needless and unlawful expenditure, and will lead to oppression and useless taxation, for that the county has already a good title to a lot and building in the town of Marshall, affording ample accommodation to the courts, juries and officers of the county, which building was erected at the expense of the citizens of the last named town.

Rice v. Smith, County Judge, and Dishon.

And the complainants aver that the above contract was made by said county judge with said Dishon, with full knowledge on the part of both, and of all concerned therein, of all the matters above set forth; and that they believe, and have good reason to believe that the contract was made, and the bonds issued by collusion and fraud between said judge and Dishon, with intent to cheat and defraud the county, and prevent the removal of the county seat.

They therefore pray a writ of injunction against the said county judge and said Dishon, restraining them and all persons in their employment from proceeding to execute the said contract, and injoining said judge not to issue nor deliver said bonds, nor any part of them, and restraining said Dishon from selling, transferring or otherwise disposing of them, or any of them; and from erecting said court house in the town of Marietta, or providing any materials therefor, until otherwise legally ordered.

An injunction was allowed, upon the foregoing bill, by the judge in vacation, and at the succeeding term of the District Court, in April 1858, a motion was filed to dissolve the same, which was overruled. At the same term there was a demurrer to the petition, and this was not sustained. The defendants then filed an answer, and after that a second motion to dissolve the injunction, which also was overruled.

The answer commences in the name of both the defendants, and admits the statements of the bill as to the petition for a vote on the question mentioned, and the order therefore; but they deny that the petition was presented in pursuance of the statute, and deny that notice thereof was given as required, and aver that the judge had no authority to make the order, and herein refer to a copy of part of the records, annexed as exhibit No. 20; they deny that legal notice was given in the townships; that the town of Marshall received the number of votes alleged, and Marietta only the number alleged by petitioners; they deny that the informalities in the returns from Le Grand, Marion and Greencastle, consisted merely of the omission of the jurat of the election

officers, but say that there were other essential defects in said returns, and among them, that said returns did not show that the officers had any color of title to the offices of judges or clerks of elections; that they did not show that they were returns of any election in Marshall county, nor that the persons signing them, signed as judges, or clerks of the election, and that they were not certified as true, and were not attested by the clerks.

The respondents further admit the alleged proceedings of the District and Supreme Courts, and the issuance of a peremptory writ, but aver that on the 6th January A. D. 1859, the said judge, calling two justices of the peace, proceeded to canvass the said returns in obedience to the writ, and that the canvassers did not reject any returns, but they did adjudge that there were no returns from the townships of Le Grand, Marion and Greencastle, and did declare the result in favor of Marietta. They deny the allegation in relation to an illegal service of the writ on the judge, and aver that there was legal service on the 6th January, by his written admission thereof. They deny the averments concerning a second service, and deny that, on the 11th January 1859, he called the two justices to his assistance, and with them canvassed the returns of the said April election upon the county seat question, and they deny that in consequence of the said pretended canvass, the town of Marshall is the county seat, but aver that Marietta is the county seat both in law and in fact.

And the respondents aver that the pretended canvass of the 11th January, was without authority of law, and void; for that at the time of making the same the said judge was not at the county seat of the county, but was at the house of one Babcock, six miles distant therefrom, and was under duress by the petitioners in this bill and other persons; that the plaintiffs, confederating with others, caused him to be arrested on a pretended criminal charge, and having acquired possession of his person, dismissed the said charge, and then by means of threats of personal violence and against

the life of defendant, compelled him to make a pretended canvass, which is the same as that mentioned as of the 11th January, A. D. 1859; that he, the county judge, did not call to his assistance the two justices, but they were among those concerned in his imprisonment and duress, and what they did was done without being called thereto by him, the judge aforesaid.

The respondents farther admit that the judge made a contract with Dishon, and issued the bonds as alleged; but deny that he did the same unlawfully or improperly in manner as alleged; and they say that the said bonds were issued long before the commencement of this suit; and they deny that the money will be needlessly, or unlawfully expended, and that it will lead to oppressive taxation; they deny collusion and fraud, and that the facts are as averred in the bill, but admit notice of them as stated in the answer; and they deny that the contract was made, or the bonds issued, for the purpose of preventing the removal of the county seat.

The answer is sworn to by Dishon, and is not signed nor sworn to by Smith, the county judge.

Upon the filing of the answer the defendants again moved that the injunction be dissolved, but the motion was overruled. The defendants appeal and assign as error the overruling the demurrer and the motions to dissolve the injunction.

*Henderson* and *Clarke* for the appellant.

*Cole & Jewett* for the appellees.

WOODWARD, J.—It will not be necessary to consider whether the court should have dissolved the injunction upon the motion based upon the bill alone, for, if the demurrer should have been sustained, or the second motion to dissolve, based on the bill and answer, this will be sufficient.

We do not think the court erred in refusing to sustain the demurrer. Objection is made to the competency of the complainants to present this bill. In *The State ex rel. Byers*

v. *Bailey*, 7 Iowa 396, and *The State ex rel. Rice* v. *Smith*, County Judge of Marshall county, Ib. 186, we held that complainants who are, and are averred to be, citizens, voters and property holders, and tax payers, had such an interest and held such relations that they might file an information for a writ of *mandamus* to the county judge to enforce a public duty in which they and other citizens had an interest; and the same reason holds good for their being permitted to pray an injunction to prevent the doing some act detrimental to their interest and those of other citizens of the county. No reason is perceived why they should not be permitted to sustain such a bill either for themselves, or for them and all others in like manner interested. These petitioners represent themselves as citizens, voters, property holders and tax payers in the county, and in one of the towns affected by these proceedings, so that, as citizens of the county they are interested in the question of expending twenty-six thousand dollars and more in building a court house; and in the place where it shall be built, as citizens and property holders in one of those towns.

Besides this, there is no officer upon whom it devolves to enforce the performance of a duty upon the county judge, or to restrain him if he is about to do an act at the same time illegal and detrimental to the rights and interests of the public and of individuals. If he should undertake to build a court house at a place which is not the county seat, there is no officer whose duty it is to cause him to be restrained, whilst the right to do it would seem to belong to many.

The petition is addressed to the Hon. J. P., Judge of the Eleventh Judicial District of the State, and was filed in the office of the Clerk of the District Court in Marshall county. This is sufficient in form as a bill in equity in that court.

The authority of the county judge to provide the public buildings, is not questioned in the bill, but has authority to place a court house in a town which is alleged not to be the county seat. This is the gist of the bill.

We think the complainants show enough to sustain their bill for an injunction. For this we need not determine, at present, which of the two canvasses of the returns of the April election, is authoritative.

It is sufficient that the bill shows that the location of the county seat is in controversy, and the proceedings in reference to it, and the state of the question, are set forth so far as to show that it is manifestly improper for the judge, in the present position of the matter, to expend more than thirty thousand dollars in the erection of a public building which must be at the county seat; and especially when it appears to the court, that when its mandate shall be obeyed, Marshall will be declared the county seat.

The grounds for the motion to dissolve the injunction, both on the bill alone and after filing the answer, are in part the same as are assigned as causes of demurrer, but in part they are different; one of these is the alleged insufficiency of the injunction bond, in that it is given to the county alone. This would, with more propriety, have run to both the county and Dishon; but we are of opinion that he would have a right to sue upon it under section 1693 of the Code, and therefore this objection could not sustain the motion. It is true that the county judge has discretionary authority as to the erection of public buildings, but this discretion may be restrained if it is abused, as if the judge is about to erect a court house at a place which is not the county seat.

And though the fraud may not be sufficiently charged, or a disobedience to the peremptory writ may be remedied under the *mandamus* itself, still the facts shown in this case warrant the injunction.

The general and particular denial of the allegations of the bill, in the answer, would, upon ordinary grounds, call for the dissolution of the injunction, were it not that the fact remains, after all the denial, that the county judge is about to expend over thirty thousand dollars upon a public build-

ing located at Marietta, whilst a controversy is pending as to the county seat, whether it shall be, or has been, removed to Marshall. This is the burden of the case, and as the granting or the continuance of an injunction is ultimately in the discretion of the court, the important fact referred to must prevent the application of some of the ordinary rules of law ; and it is farther to be borne in mind, that Smith does not answer, whilst the more material facts relate to him or his office, and lie more particularly within his knowledge.

In a cause relating to this controversy, which was before this court at the December term, A. D. 1858, this court held that the question of the validity of the returns from the three townships, was not involved, but the only question was whether the canvassers should count them. And it was held that they must count them, that they could not judge of their validity, beyond the question whether they were *returns*, and that their validity must be tried by another proceeding, which might be a *mandamus*, a *quo warranto*, or an injunction. And now this case is probably brought to try that ultimate question, whether the returns from the three townships are such as should be received and counted. In the answer it is alleged that the election was not legally called and conducted, for various reasons given, and several reasons are assigned why the returns mentioned are not sufficient and legal. Whatever else may be alleged and may appear, it appears that the controversy is pending, and the work of building is not done.

It was not in the power of the canvassers, after the issuance of the peremptory writ, to declare the supposed returns from the three townships to be no returns. On this point we refer to the case of the *State ex rel. Rice v. W. C. Smith*, county judge, upon the *mandamus, ante.*

The complainants insist that there was a second and legal canvass by which Marshall was declared to be the county seat. The county judge acknowledged a legal service on the 6th January, and acted upon it, and this was sufficient. It would not be in his power, after this, to object the want

of a legal service by reason of a copy being served upon him instead of the original writ. The second service of the 10th January, was superfluous; and another reason why this should not be regarded as conclusive is, that the judge does not recognize it. He admits service on the 6th of January, and avers that he canvassed under it, and insists that the supposed canvass of the 11th was not his. But whatever may be said of the other parts of this proceeding—his answer and averment that the justices acting in this canvass of the 11th were not called by him, will prevent it being taken as conclusive, at least for the present.

We have before remarked that in another cause now before this court, it is held that the canvassers under the peremptory writ could not declare the returns from the three townships to be *no returns*, and while under that case they must make a canvass, counting those returns, this cause must proceed to the trial of the question pertaining to the sufficiency and validity of those returns. The former cause in this court determined only that the canvassers must count them.

That decision was not upon the ground that they were sufficient, but expressly upon the ground that the canvassers had no authority to decide this. And, as the case was presented, *this court* could not then determine that question, but it was left for another proceeding, if the parties choose to try it. And such a further proceeding is the present cause, in which every question relating to the sufficiency of those returns, and to the legality of the election, which is stated or involved in the answer, may be tried. Until the conclusion of this cause, which is the one actually determining which place is the county seat, the injunction must continue. The judgment of the District Court is affirmed, and a writ of *procedendo* will issue, and the cause be conducted to trial in accordance with this opinion.