## Sweatt v. Faville *et al.*

1. **Injunction:** AMENDED PETITION. It is not error to overrule a motion to dissolve an injunction on account of defects in the petition upon which it was granted, when an amended petition has been filed curing these defects, and taking the place of the original without changing its cause of action.

| 23 | 321 |
| 85 | 603 |
| 23 | 321 |
| 93 | 30 |
| 23 | 321 |
| 101 | 520 |
| 23 | 321 |
| 103 | 223 |
| 23 | 321 |
| 121 | 699 |

2. —— RE-LOCATION OF COUNTY SEAT. The new vote provided by our statute (Rev. 1860, § 231 *et seq.*, and ch. 49, Laws of 1862) is not the only remedy by which a controversy relative to the re-location of a county seat can be settled, but an injunction will be granted to restrain the removal of the records and offices to a new point, where the petition alleges fraud and illegality sufficient to invalidate the legality of the proceedings and prays for a decree declaring the election void on account thereof.

3. —— STATUTE OF LIMITATIONS. And in such a case the action will be deemed *commenced,* within the meaning of the statute, by the service of the writ of injunction; and it is accordingly *held,* that the action is not barred by the statute of limitation where the writ was served within five years after the election, but the notice was not served until more than that period had elapsed.

4. —— ORIGINAL NOTICE. A motion to dissolve an injunction for delay in the service of notice, not made until after the notice has been served, comes too late. Nor is the form or sufficiency of such notice material after the defendant has appeared and invoked the action of the court.

*Appeal from Mitchell District Court.*

TUESDAY, DECEMBER 10.

INJUNCTION.— The original petition was filed October 16, 1865, the order of the judge allowing the writ, bearing date September 22, 1865. The writ issued on the day the petition was filed and service was accepted, January 1, 1866. Its command restrained the defendants therein named, from removing their offices, records, etc., as will be more fully understood as we proceed with the case. An original notice issued, was placed in the hands of one not an officer, November, 30, 1866, and was served on most of the defendants on the same date. This notice is directed to the defendants, informs them of the filing of the petition, the substance of the prayer, and names the day and term at which they were required to answer. May 25, 1867, two of the defendants moved to dissolve the injunction for reasons stated. July 15, 1867, plaintiff

moved to strike this motion, which latter motion was sustained. Plaintiff had leave to file an amended petition, which was accordingly filed July 24, 1867. On the 29th, a second motion to dissolve the injunction by·one of the same defendants, was filed, considered and overruled, and both the defendants thus appearing, prosecute this appeal.

*William McClintock* for the appellant.

*John N. Rogers* and *T. M. Atherton* for the appellee.

1. Defendant's motion, so far as it sought to dismiss the bill, was rightly overruled. The bill could not be dismissed on motion, on any ground set up by defendants. They should have either demurred or answered.

2. The granting, continuing or dissolving of a preliminary injunction is peculiarly in the discretion of the court, and. will not be reviewed by an appellate court, except in very special and clear cases. *Cox* v. *Mayor, etc.*, 18 Geo. 728; *Semmes* v. *Mayor, etc.*, 19 Id. 471; *Fleischman* v. *Young*, 1 Stockt. 620.

3. In this case, where it appears that there is a controversy pending as to which of two places is the legal county seat, which it is the object of this suit to settle, and where defendants have failed to answer or otherwise controvert the petition on the merits, though two years. have elapsed since the suit was commenced, an injunction restraining the actual removal of the county seat will not be dissolved, on merely technical grounds, until the final determination of the controversy. *Rice* v. *Smith, Co., Judge, etc.*, 9 Iowa, 570.

4. Defendants have filed neither answer, affidavits, nor any proof, controverting the petition; which, on its face, shows a state of facts clearly entitling plaintiff to the relief sought. *Collins* v. *Ripley, Co. Judge*, 8 Iowa, 129;

*State* v. *Co. Judge, etc.*, 7 Id. 186; *State* v. *Bailey, Co. Judge*, Id. 390.

5. An original notice was issued and served before defendants filed their motion to dissolve, or took any steps in the cause; after which a motion to dissolve for want of such notice is too late. And under our statute, an appearance in the cause, for *any* purpose, dispenses with the necessity of notice. *Seeber* v. *Hess*, 5 Paige, 85; *Parker* v. *Williams*, 4 Id. 439; Rev. 1860, § 2840, subd. 3.

6. Defendants are too late in moving for a dissolution more than eighteen months after the injunction was issued and served. They will not be heard after such laches, but must abide the final determination of the suit. 2 Waterman's Eden on Injunc. 372, 374, note; *Bell* v. *Hull & Selby Railway Co.*, 1 Railway Cas. 616.

7. The defense of the statute of limitations does not arise on the face of the petition, and must be set up by answer, if at all. It cannot be made available by motion. And neither the statute of limitations, nor any other new affirmative matter, set up by answer or plea, is a ground for dissolving an injunction, on motion. *Hutchins* v. *Hope*, 12 Gill. & Johns. 244; *White* v. *Flannigan*, 1 Md. 525; Hilliard on Injunc. § 55, p. 100.

8. An injunction suit is a "special proceeding," under the Iowa practice, and no original notice is necessary. It is the duty of defendant when served with the writ of injunction, to appear and move to dissolve, or answer, without other or further process to bring him before the court. Rev. ch. 154, *passim;* Id. § 3555.

9. The suit is commenced, so as to stop the running of the time of limitation, by filing the petition; at all events, by issuing and serving the injunction. Section 2744 of the Revision is not *exclusive*, and applies more particularly to cases where the notice is the first proceeding in

the suit, the petition not being filed till afterward. The rule was the same at common law, as to commencing actions by *writ*, which always preceded the filing of the declaration. Angell on Limit. ch. 28, §§ 312, 315; Id. § 330 and note 1, 2; 2 Greenl. on Ev. § 431.

10. If the suit had not been commenced till the original notice was issued, it would not have been barred by limitation. The "cause of action" is, that Mitchell is. the legal county seat, and the defendants threaten and intend to remove the county offices, etc., to Osage, illegally and to the plaintiff's prejudice. The election set forth in the petition does not constitute the cause of action, nor any constituent element therein. It is not by virtue of that election that Mitchell claims to be the county seat, and it was unnecessary to set forth the election in the petition. It does not matter what were the grounds or color of right relied on or set up by defendants as a justification for their alleged wrongful intention of removing the county offices, nor how far back in the past those grounds originated. The case would stand precisely in the same attitude as respects limitation, if there never had been any election, and if defendants were proceeding wholly without color of right. Just so long as the danger of the threatened wrong exists, so long there is a right to apply to a court to restrain it. It is a *continuously accruing* cause of action.

11. Plaintiff is not chargeable with laches in the prosecution of the suit. Defendants were bound to come in and answer or move to dissolve, on being served with the writ. Besides, the county officers, who were the sole original defendants, were not the real parties in interest, and merely *ex officio*, had no interest in resisting the suit, and plaintiff was not bound to proceed actively against them (they taking no steps to defend), as judgment against them would settle nothing conclusively against

other parties. See *State* v. *Cavers et al.*, 22 Iowa, 343. It was not until July 15, 1867, that defendant Foreman intervened in his private capacity, alleging a personal interest, and was as such made a defendant; down to which time, nobody interested in the defense had appeared in the case.

12. It was not necessary to file the petition before applying to the judge for the injunction. And that this was not done, is no ground for dissolution. Hilliard on Injunc. p. 52, § 125 ; *Davis* v. *Reed*, 14 Md. 152.

WRIGHT, J. — Several of the points made by the appellants strike at the sufficiency of the original petition. 1. INJUNCTION: The amended petition, however, covers the amended petition. whole ground, was intended to and did take the place of the original, and we look to it as a consequence, to determine plaintiff's right to the relief asked. He had a right to amend; a right to make his claim to relief as clear and perfect as possible, and it is upon the last, and not upon the first petition, he stood in the court below, and stands here, in his appeal to the chancellor. Of this there can be no doubt, when it is remarked that there is no departure from the original cause of action, nor conflict or inconsistency in the two pleadings. We turn, therefore, to the contents of the amended petition, to ascertain the case made, and determine whether this injunction should or should not have been dissolved. For though improperly issued, on account of defects in the original petition, if these have been cured, then there was no error in overruling this motion.

The pleader states that he is a citizen, legal voter, and tax payer of Mitchell county, and the owner of property 2. —— re-loca- in, and a resident of the town of Mitchell, tion of county seat. interested directly in the location and retention of the county seat at that place; that since 1860,

this has been the county seat, and still is, legally and of right; that in January, 1861, a petition was presented to the board of supervisors of said county, praying an order for a vote for the re-location of said county seat, and to remove it from Mitchell to Osage; that though said petition was not signed, when finally considered, by a majority of the legal voters of said county, and though a majority of said voters filed their remonstrance, the prayer was granted and the vote ordered; that at the election so ordered, 953 votes were cast, of which, 486 were for Osage, and 467 for Mitchell; that Osage received 102 illegal votes in the township of Osage, and 11 like votes in other townships — giving the names of the voters; that a large majority of the legal votes cast, were in favor of Mitchell; that the board of supervisors, nevertheless, in April, 1861, canvassed the votes, and declared the result to be in favor of Osage, by a majority of 19, and though Mitchell, still, is legally the county seat, they ordered all the county officers to remove their offices to Osage, and on the 6th of June, next following, made a further order instructing their clerk to carry out and enforce the order first made; that unless restrained, defendants (the supervisors and county officers), will remove said offices and the county records, and proceedings will be instituted by them to compel such removal, etc.

The prayer is for an injunction to restrain such removal, for a decree declaring said election void, and that Mitchell is the legal county seat, and for general relief.

We first consider, whether, from the showing made, the writ was properly issued. And here one objection is that petitioners' remedy was by a new vote as provided by Rev. § 231 and Laws 1862, p. 52.

It is true that under the law a new vote, the requisite petition being presented, may be taken every three years. But this is not the only remedy, if remedy it can be

called. If the election was held without authority; if, in fact, a majority of the legal votes were not cast in favor of the new point; if there was fraud or illegality of any kind sufficient to invalidate the proceedings, those in interest, and having a right to complain, must have some other remedy than by the new election provided by the statute. For, if, by the law, the records should not be removed, some remedy should be given to restrain the same. And the question is, whether injunction is that remedy.

Our law does not provide any method for contest in these cases, as it does to individuals claiming the same office. The case of *Cochran* v. *McCleary* (22 Iowa, 75) is, therefore, not applicable. That the legislature should make some provision on this subject, and give a speedy, plain and summary method for settling these most warmly contested, and to the public, important controversies, each day renders more and more manifest. Our courts should not be required to pass upon them in the first instance, but a tribunal should be provided where the whole matter could be speedily tried and determined. In the absence of such legislation, can equity grant the relief asked? The case of *Rice* v. *Smith* (9 Iowa, 570) is an authority for the exercise of the power, as prayed for in this petition, and we are content to there leave it. In view of all the decisions, and especially the limited duties and powers of the board of canvassers under the writ of mandamus, we know of no other adequate remedy in these cases.

The next and only remaining question of importance is, whether plaintiff's action is barred by the statute of limitations, the command of which is, that it must have been brought within five years next after the cause thereof accrued. Rev. §§ 2740, 2743.

The vote was taken in April, 1861, the petition filed October 16, 1865, and the writ served January 1, 1866. The notice was placed in the hands of one not an officer, and served November 30, 1866. It will thus be seen, that the petition was filed and the writ served within five years, but that the orignal notice was not served until after.

Whether the cause of action within the meaning of the statute is the alleged illegal election, or the purpose of the officers to remove the records and offices in pursuance thereof; whether, as plaintiff claims, it is a continuously accruing cause of action; whether the objection can be taken by motion, or only by answer — all these questions we pass, placing our ruling on the ground, that the action was commenced for the purposes of the present inquiry, at least, by the service of the writ of injunction, and as this was in time, the motion as to this objection was properly overruled.

It is true that section 2744 (being a part of the chapter on "limitation of actions,") provides, that the delivery of the original notice to the sheriff, or the actual service of the notice by another person, is the commencement of the action. But we do not believe that it therefore necessarily follows that a case may not, within the meaning of the statute, be treated as brought, though commenced otherwise than thus prescribed. To illustrate: The injunction was asked in this case as an independent means of relief, not as auxiliary to other proceedings. It was directed to the defendants by name, and advised them fully of the prayer of the petition, and of their duty to obey its mandate. They all acknowledged service, and the sheriff made his return, as commanded, to the next term of the court.

After this, the board of supervisors took no action whatever in relation to said proceeding, nor have they

ever ordered any defense of the same. The only party now appearing and moving to dissolve, is one of the board, a citizen and tax payer, and interested in the removal of the county seat to Osage. Now, it seems to us, that under such circumstances, this being a special proceeding, the action was not barred, though the original notice was not served until more than five years after said election and the order made by the board. That is to say, assuming, that the cause of action accrued in April, 1861, we think that the action was commenced at least when the writ was served. There is no provision in the statute regulating the writ, that an original notice shall be issued. And while we do not hold that one should not be served, we do hold that when, by the writ, parties are restrained from the commission of the threatened wrong or act, the action is commenced, and that the injunction should not be dissolved because the notice was not in the sheriff's hands in the one instance or served in the other, within the five years.

The writ is granted by the order of a judicial officer, either in term time or vacation. Defendant may, in the discretion of the judge, have opportunity to show cause why the writ may not be granted, or he may before the next term, apply to have the same modified or vacated. So the judge has power in vacation, and before the next term to punish the party for a violation of the command of the writ, to require him to give security, and to issue his precept to bring the alleged delinquent before him. And thus we see that, giving the statute a fair and liberal construction, this special proceeding should and must be regarded as commenced at least by the service of the writ. The defendants know, are informed by it, what relief is asked, and what they are to do, just as certainly as by the original notice, and even more so. If there was a formal notice in the writ itself, there would be no ques-

tion as to its sufficiency. And yet, suppose it omitted, but the defendants are nevertheless advised of the filing of the petition and the relief asked, and of the whole object of the proceeding (as they were in this case), would it not be giving too strict a construction to the statute to say that the action was not then "commenced." Looking at the whole tenor and purview of our legislation, the nature and object of this writ, we cannot but thus conclude; and, therefore, hold that this objection was not well taken.

It only remains to add, that there does not seem to have been any unreasonable delay in the service of the notice, after granting the writ. Not only so, but the motion was made after its service, and the cases of *Leslie* v. *Hess* (5 Paige, 85), and *Hightour* v. *Rush* (2 Hayw. 361), relied upon by appellant, are not applicable. Nor is the form or sufficiency of said notice material, since appellant has appeared and invoked the action of the court. The jurat to the amended petition is not defective for the ground stated, for it does show affirmatively that it was sworn to by the petitioner.

4.—original notice.

Affirmed.