# CHARLESTON.

M. HICKENBOATOM *et als. v.* COUNTY COURT OF WOOD COUNTY.

Submitted November 27, 1923.    Decided December 18, 1923.

1.  HIGHWAYS—*Vote in Road Bond Election. to be Canvassed by County Court Sitting As Board of Canvassers.*

    The returns of a vote in a road bond election, held pursuant to sections 106 and 107, chapter 43, Barnes' Code, 1923, are to be canvassed and the result ascertained and certified by the commissioners of the county court sitting as a board of canvassers.    (p. 259).

2.  SAME—*Result of Road Bond Election Must be Certified to County Court.*

    The result so ascertained is to be certified to the county court for entry on its record in order that proper action may be taken thereon.    (p. 259).

3.  SAME—*County Court Acting Judicially Cannot Entertain Road Bond Election.*

    While a county court, acting judicially, may, under section 15, chapter 39, Barnes' Code, 1923, entertain and conduct a contest in a county seat relocation election, it can not do so in a road bond election, held under sections 106 and 107, chapter 43, Code.    (p. 261).

4.  QUESTION NOT DECIDED.

    Whether a court of equity has jurisdiction to entertain a contest in a road bond election and to restrain the issuance of such bonds on the ground of fraud or other illegality in the election, discussed but not decided.    (p. 262).

Proceedings by the State, on relation of M. Hickenboatom and others, for a writ of mandamus, to be directed to the County Court of Wood County, etc.

*Writ refused.*

*J. W. Vandervort* and *A. D. Ireland,* for relators.
*C. N. Matheny, Robert B. McDougle, Jas. S. Wade,* and *E. R. Staats,* for respondents.

MEREDITH, JUDGE:

On June 26, 1923, a special election was held in Harris Dis-

trict, Wood County, on the question of issuing $88,000 of bonds to improve certain roads in that district and to provide a maximum levy to pay the bonds and interest thereon. On June 27th a notice of demand for a recount of the votes cast was served upon the President of the County Court and Canvassing Board, signed by the petitioners here, who are citizens and tax-payers of the district. On July 2nd the County Commissioners met as a canvassing board to canvass the election returns, whereupon the petitioners demanded that the ballots be recounted and that the county court should hear evidence that the petitioners then offered to produce showing fraud and illegality in the vote at the election, and to declare the result. An adjournment was then taken until July 5th, whereupon the petitioners repeated their demands; they were then informed that the commissioners were sitting, not as a county court, but as a board of canvassers, and as such they had no power to hear evidence of fraud and illegality in the conduct of the election; but that if they wanted such evidence heard, they should make their demand when the commissioners were sitting as a county court. Petitioners replied that since the commissioners of the county court were the board of canvassers, they would and did make the demand then and there. The board canvassed the returns, recounted the votes and declared the result, which showed that the bonds had carried by the required majority. After adjourning on July 2nd and July 5th, as a board of canvassers, the commissioners sat on each of these days as a county court; but no demand seems to have been made on the commissioners while sitting as a county court to hear evidence of fraud and illegality in the election,—at least that is the contention of the county court.

During these proceedings the petitioners presented and asked the county court to sign certain bills of exception, which the commissioners refused to sign as a county court, but offered to sign as commissioners of the board of canvassers.

Upon being refused a writ of mandamus by the Judge of the Circuit Court, petitioners applied to this court for such writ, seeking to compel the County Court to correct its record by entry of a *nunc pro tunc* order showing the proceedings above narrated were had by and before it as a county court

and not as a board of canvassers and to hear and consider all legal evidence that may be offered by petitioners touching fraud, illegality and irregularity in the election and to declare the result and enter it of record; but, if that can not be done, then to compel the county court to sign petitioners' bill of exceptions, exhibited with the petition, or if the truth be not fairly stated therein, then to proceed to settle and sign a proper bill of exceptions.

There is no issue of fact involved.  It is conceded by counsel for petitioners that if the commissioners of the county court, at the time the several demands were made requesting them to hear evidence touching fraud and illegality in the election were sitting as a board of canvassers and not as a county court, then petitioners have no case; that the board of canvassers could not hear evidence showing that illegal votes were cast or that there was fraud in the election; but it is contended that in a road bond election the county court does not sit as a board of canvassers but as a county court; that as a county court it canvasses the returns, and if requested hears evidence as a judicial body, and being a judicial body, if it refuses to hear evidence and to determine questions arising thereon as to fraud or illegality in the election, it may be compelled to do so; or if it refuses to sign proper bills of exception, this it may be required also to do, in order that the parties in interest may by proper procedure have the matter reviewed by the circuit court.

Counsel for respondents urge the following grounds of defense:

1.    That when the demands were made the commissioners were sitting as a board of canvassers and not as a county court, hence no proper demand was ever made upon the court to hear evidence of fraud and illegality touching the election.

2.    That conceding the demand was properly made on the commissioners sitting as a county court, that body as a court has no authority to hear evidence upon such demand and to determine therefrom whether the bond election was legal or illegal.

3.    That the only way the court could set aside the result of the bond election is upon a contest, on notice given to those who voted in favor of the bonds, and presented in the

same way as contests are presented between opposing candidates for office; they concede that such notice might be served upon the petitioners who signed the original petition asking the court to call the election.

We will consider these in order.

1. For the purposes of this case we do not consider it material whether the demand was made technically upon the board or the court; each body is composed of the same persons; generally speaking, the duties of the board in regard to elections are entirely different from the duties of the court. The duties of the board are ministerial; it can not hear and determine contests; the court can and does hear and determine contests, and as such acts judicially. It then functions as a court. But the commissioners may, as in fact they did on July 2nd and July 5th, sit as a board of canvassers and as a county court; whether they so sat in both capacities at the same moment is not material. But they could change at will; one moment they could transact business as a court, and another they could attend to their duties as a board. So far as their separate records would show, they might attend to both duties at the same moment. Hence, if petitioners' rights depended upon whether the demands were made upon the board or upon the court, petitioners all the time insisting they were made upon the court, while respondents insist that at the time they were made, they were sitting as a board, we would brush aside the technicality and treat the matter as though demand was made upon the court. If they were actually sitting as a board when the demand was made, it could be treated as a continuing demand until the commissioners resumed business as a court. So for the purposes of this case, we will consider that the demand was made upon the court, it being conceded that as a canvassing board it had no authority to hear evidence of fraud or illegality in the election.

2. The real defense presented is on the question whether the county court has authority under the law to go behind the returns of a bond election; whether it can entertain a contest, hear evidence of fraud or illegality, and upon finding fraud or illegality in the votes cast refuse to count the fraudulent votes and thereby change the result. Counsel for

petitioners rely upon *Poteet* v. *County Court,* 30 W. Va. 58, 3 S. E. 97, and *Brown* v. *County Court,* 45 W. Va. 827, 32 S. E. 165.

Both of these were county seat removal cases. The statute providing for an election to be held upon the proposition to relocate a county seat, when the Poteet case was decided, was substantially the same as the present statute, sec. 15, ch. 39, Barnes' Code, 1923. There the proposal was to remove the county seat of Cabell County from Barboursville to Huntington. According to the face of the returns, the proposition carried. Poteet and others favoring Barboursville, appeared before the county court and offered evidence tending to show fraud and corruption in the election, affecting sufficient votes to overthrow the results, but the court refused to hear the evidence. They asked the court to settle and sign bills of exception, showing their offer, but the court refused to do so. They applied to the circuit court for a writ of mandamus and that court issued the writ, commanding the commissioners of the county court to settle and sign a proper bill of exceptions; the commissioners obtained a writ of error and this court, correcting the judgment of the circuit court in some particulars, affirmed the judgment as amended. In *Brown* v. *County Court, supra,* this court, at the suit of a voter and tax-payer, awarded a peremptory writ of mandamus to compel the county court to take jurisdiction of a contest, take up the returns of the vote, canvass them, recount the ballots, and hear evidence touching fraud and illegality in the vote, if asked to do so, and declare and enter the result of record. At the same time a writ of prohibition was awarded prohibiting the commissioners of the county court sitting as a board of canvassers from exercising any jurisdiction whatever over the certificates and returns of the vote. It was there stated in point two of the syllabus: "Returns of a vote on relocation of a county seat, taken either at a general or special election, must be canvassed, and the result declared by the county court, not by the board of canvassers." Such in effect was also the holding in *Poteet* v. *County Court, supra,* and *Welch* v. *County Court,* 29 W. Va. 63, 1 S. E. 337. Judge DENT in a concurring note in *Brown* v. *County Court, supra,* says that these holdings that a

county court has authority to hear and determine contests on the relocation of county seats is legislation by judicial construction to supply an inadvertent omission in the statute, but he gave his approval to prevent a denial of justice. We are asked to hold in this case that the county court can entertain a contest over a road bond election and in like manner hear evidence, ascertain all facts as to fraud or illegality, and then declare and record the result. To determine this question we must compare the provisions of law providing for the issuance of road bonds with the provisions for relocating county seats.

Section 8, Article 10 of the Constitution provides that no county shall contract a debt under that section "unless all questions connected with the same, shall have been first submitted to a vote of the people, and have received three-fifths of all the votes cast for and against the same." Bonded debts incurred on behalf of magisterial districts are county debts. *Neale* v. *County Court,* 43 W. Va. 90, 27 S. E. 370, and come within the purview of this section of the Constitution.

The road bond election was held pursuant to sections 106 and 107, chapter 43, Barnes' Code, 1923. They provide for the following steps:

1. A petition, signed by 20% of the legal voters within the magisterial district specifying the roads to be built or improved, and praying for such improvement and for a submission of the road bond proposition to a vote, to be filed with the clerk of the county court.

2. Upon its being filed with the clerk, the county court is required without delay to instruct the county engineer or some other engineer specially employed by it, or to apply to the state road commission for an engineer, to make an investigation and report to the court an estimate of the probable cost.

3. Upon the approval of the plan by the court, the court shall submit to the legal voters of the district a proposition for such issue and sale of bonds. The order of submission is required to contain a summary of the engineer's report and other data not material here.

4. The court is required to publish the order for four suc-

cessive weeks prior to the election and the clerk of the court
to post copies of the order signed by him, one in his office
in a conspicuous place and one at the front door of the court
house.

5. A vote shall thereupon be taken (sec. 107), and "if
the said vote is taken at a special election ordered for the
purpose, the same shall be held by commissioners appointed
for the purpose by the county court at the time said election
is ordered, *and the result shall be ascertained and certified ac-
cording to the regulations prescribed by law for ascertaining
and certifying the election of county and district officers.*"

6. *If it shall appear by said poll* that not less than three-
fifths of the voters of the magisterial district, who voted
upon the proposed issuance of the bonds, have voted in favor
of the same, the county court shall then have authority to
issue the amount of the bonds.

Section 68, chapter 3, Code makes the commissioners of
the county court a canvassing board, giving them authority to
canvass the returns of elections as to candidates for office, in-
cluding county and district officers. By section 69 they are
required to make a record of the votes received by each can-
didate for the offices therein named, making separate cer-
tificates for each office. Section 70 provides what shall be
done with the certificates and what official shall declare the
result in particular instances. These sections make it the
duty of the canvassing board to ascertain and declare the
result as to the election of county and district officers, and
to issue them certificates of election.

It will be observed that section 107, chapter 43, Code,
provides that the result of the bond election "shall be ascer-
tained and certified according to the regulations prescribed
by law for ascertaining and certifying the election of county
and district officers." We have seen that under sections 68, 69
and 70, chapter 3, Code, the result of an election of county
and district officers is ascertained and certified by the county
commissioners sitting as a canvassing board,—not by the
county court; so that under these provisions the result of a
road bond election is to be ascertained and certified by the
county commissioners sitting as a canvassing board,—and not
by the county court. True, there is no provision made as to

what disposition shall be made of the certificate of the result. In case of candidates, a certificate is to be furnished to each person voted for. But what body is to act upon the result in case the bond proposition carries? The county court. It must therefore necessarily be implied that the certificate showing the result of the bond election be delivered to the county court or its clerk so it may be entered upon the court record in order that the court may take appropriate action thereon.

. But petitioners' counsel strenuously insists that substantially the same provision is made for ascertaining the result in a county-seat relocation election, and that inasmuch as this court has held in the Poteet case and in the Brown case, heretofore mentioned, that the county court acts as a court in canvassing the returns, ascertaining and declaring the result, in relocation elections, it must necessarily act as a court in performing the same duties respecting a road bond election.

Let us see what section 15, chapter 39, Code, providing for the relocation of county-seats, says. It provides:

1. A petition signed by two-fifths of all the legal voters of the county, to be estimated by allowing one vote for every six persons in the county, as shown by the last preceding census, praying for a relocation of the county-seat, is to be filed with the county court.

2. The court is then required to make an order that a vote be taken at the next general election, or fix a day in case of a special election for such vote.

3. The clerk of the court is required, upon its adjournment, to make and certify a copy of the order for each voting place in the county, which the sheriff is required to post at each voting place at least forty days before the election; and if a newspaper be published in the county, the court is required to publish a copy of the order for four consecutive weeks prior to the election.

4. "The said votes shall be taken, superintended, conducted and returned, in the same manner, and by the same officers, as elections for state and county officers. If said elections be held at a general election, the commissioners of election shall make out and sign a separate certificate of the result of said vote, and *deliver the same to the clerk of the*

*county court* within the same time they are required by law to deliver the certificates of the result of the election for officers held by them. And if said election be held at a special election, then said county court shall at the session at which the election is ordered, appoint three commissioners of that election for each voting place in said county, who shall ascertain and certify the result of such election in the same manner as herein provided to be done at a general election. And the certificate of the result of such special election shall be laid before the court by the clerk thereof, at a special session thereof, which shall be held within five days (Sunday excepted) after such special election. *Said court shall thereupon ascertain and declare the result of said vote and enter the same of record."*

5. "If three-fifths of all the votes cast at said election upon the question be in favor of the relocation at either of the places voted for, the said county court shall enter an order declaring the place so receiving three-fifths of all the votes cast therefor, to be the county-seat of said county from and after that date."

It will be observed that the procedure in a road bond election is substantially like the procedure in a county-seat relocation election up to the point where the votes cast at the various precincts are counted. After the count is completed, then there appears a divergence. In the bond election the returns go before the board of canvassers to be there canvassed and the result declared. But in a relocation election, "The said votes shall be taken, superintended, conducted and returned, in the same manner, and by the same officers, as elections for county and state officers"; that is, the election is held, the votes at the various precincts are counted and returns thereof are made in the same way and by the same officers as in an election for officers, or for that matter, in a road bond election. However, when it comes to the point to whom the returns, that is, the certificates of the results at the various precincts, are to be made, there is a material difference; in a road bond election they go before the commissioners of the county court sitting as a board of canvassers; in a relocation election they go to the clerk of the county court to be by him laid before the court. In the former case the board can-

vasses the returns and declares the result; "the result shall be ascertained and certified according to the regulations prescribed by law for ascertaining and certifying the election of county and district officers," sec. 107, ch. 43, Code. But in a relocation election, the certificates showing the results at the various precincts are to be laid before the county court by its clerk to whom they must be sent under the law, and by the court the returns are canvassed, the result ascertained and declared.

This court bases its conclusion in the Poteet case and the Brown case largely on the ground of necessity, in order to afford some remedy against fraud and illegality in county-seat relocation elections. Counsel for petitioners urges the same ground in this case. In *Brown* v. *County Court, supra,* it was suggested that there was a remedy in equity by way of injunction, but Judge BRANNON held that the legal remedy was adequate. While he does state that there is some doubt whether equity would have jurisdiction, he does not deny it. Some courts make a distinction between county-seat relocation election cases and bond election cases, denying equity jurisdiction in the former, but affirming it in the latter. The legislature has provided no means for contesting a road bond election for fraud or corruption or other illegality. In the new era of road construction millions of dollars have been voted in road bonds; and yet the improvements have only fairly begun. Millions more will probably be voted in the lifetime of the present generation. The law which would permit interested parties to carry such elections by fraud, by the purchase of election officials or voters, or by substitution of false ballots, by intimidation or other illegal methods, and deny the decent citizen, whose property is thus mortgaged, the right to contest the election in some way would be monstrous, and unworthy of the respect of civilized people. While we can not make it a point of decision in this case, we feel that it is proper to state that where a road bond election is carried under such circumstances, there being no adequate remedy at law, equity ought not to hesitate to afford a remedy, if prompt application be made. See *Bull* v. *Read,* 13 Gratt. (Va.) 78; *Redd* v. *Supervisors,* 31 Gratt. (Va.) 695; *Crampton* v. *Zabriskie,* 101 U. S. 601; *List* v. *City*

*of Wheeling,* 7 W. Va. 501; *McClung* v. *Livesay,* 7. W. Va. 329;
*Schumacker* v. *Toberman,* 56 Cal. 508; *Boren* v. *Smith,* 47
Ill. 482; *People* v. *Wiant,* 48 Ill. 263; *Dickey* v. *Reed,* 78 Ill.
262; *Maxey* v. *Mack,* 30 Ark. 472; *Solomon* v. *Fleming,* 34
Neb. 40; *State* v. *Eggleston,* 34 Kan. 714; *Krieschel* v. *Board,*
12 Wash. 428; *Rice* v. *Smith,* 9 Ia. 570; *Sweatt* v. *Faville,* 23
Ia. 321.

We find no authority in the statute authorizing county
courts to entertain contests in road bond elections. To so
hold would be in the very face of the statute requiring the
returns to be canvassed, the result ascertained and certified
by the commissioners, sitting as a board of canvassers. We
therefore refuse the writ.

*Writ refused.*