ATTORNEY GENERAL *vs.* BOARD OF ALDERMEN OF EVERETT
& others.[1]

Middlesex.   May 5, 1966. — June 20, 1966.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, KIRK, & REARDON, JJ.

*Elections.   Attorney General.   Equity Jurisdiction,* Elections.

The Attorney General had no standing under G. L. c. 54, §§ 109, 134, 135, to ask the Superior Court for, and the court was without power to issue, an order directing a city clerk to allow the Attorney General and his staff to examine ballots cast in a city election. [194–196]

A court of equity had no jurisdiction of a suit by the Attorney General merely seeking to have declared void the election of certain officers at a city election and an order issued for the holding of a special election to fill the resulting vacancies. [196–197]

BILL IN EQUITY filed in the Superior Court on February 8, 1966.

The suit was reported by *Fairhurst, J.*

*Willie J. Davis,* Assistant Attorney General, for the Attorney General.

*John F. Kryzovic & John P. Morley* for Margaret A. Mitton.

*Maurice Mitchell* for Paul Alpert.

KIRK, J.   By this second substitute bill in equity the Attorney General seeks to have declared void the election of Margaret A. Mitton to the school committee and of Paul Alpert to the common council of Everett.   He also asks that the board of aldermen of Everett (the board) be directed to hold a special election for the purpose of filling the posts if vacancies are declared under the first two prayers of the bill.   Mrs. Mitton demurred to the bill and filed a plea in abatement.   Alpert filed only a plea in abatement.   The board filed no pleading to the substitute bill. At the argument before us all parties stated that they had agreed to be bound by our disposition of the demurrer and pleas in abatement as if all had filed identical pleadings.

[1] Margaret A. Mitton and Paul Alpert.

The judge sustained Mrs. Mitton's demurrer, overruled the pleas in abatement, and denied to the Attorney General leave to amend. He reported the case to us under G. L. c. 214, § 30, for a determination of the correctness of his disposition of the demurrer and pleas. *Powers* v. *Heggie,* 268 Mass. 233, 237.

We decide the case on the demurrer.

The bill alleges the following. The city of Everett held a municipal election on November 2, 1965. Mrs. Mitton and Alpert were declared winners in their respective races. The board of registrars of voters held a recount from November 15 to 18. (Although not clearly alleged in the bill the recount apparently left the election of Mrs. Mitton and Alpert undisturbed.) On November 19, 1965, the board of registrars informed the district attorney of Middlesex County of "discrepancies and irregularities on voters' ballots" cast in the election. The registrars wrote that the "pattern of irregularities was so consistent, that it would appear that the law has been violated. The entire matter warrants a full and prompt investigation by your office." Because the district attorney lacked the requisite manpower to conduct the investigation, the task was assumed by the Attorney General whose first step was to obtain on November 26, 1965, from the Superior Court sitting in Suffolk County, an order directing the city clerk of Everett to allow the Attorney General and his staff to examine all absentee ballots. The Attorney General's investigation showed a number of erasures on absentee ballots with respect to the Mitton and Alpert contests. The erasures show that the ballots were tampered with to the extent that Mrs. Mitton and Alpert would not have won without the tampering. As a result of the investigation an election inquest was held in the First District Court of Eastern Middlesex in Malden. The judge who conducted the inquest submitted a report annexed to the bill in which he recommended the issuance of complaints for violation of G. L. c. 56, § 55.

Before we proceed to a consideration of the demurrer we think it is important to point out that the order of Novem-

ber 26, 1965, directing the city clerk of Everett to permit the Attorney General and his staff to examine the ballots cast on November 2, 1965, was improvidently entered. Under G. L. c. 54, § 109,[2] the city clerk is permitted to allow only persons "required by law" to examine the ballots. The persons who may properly be permitted to examine the ballots within thirty days following an election are defined in G. L. c. 54, §§ 134,[3] 135.[4] The Attorney General is not

---

[2] "City and town clerks shall retain in their custody the envelopes or containers containing the ballots cast, without examining them or permitting them to be examined by any person except as required by law, and upon the expiration of the period fixed for their preservation shall cause such ballots to be destroyed."

[3] Section 134 provides as follows: "If a person who has received votes for any office at an election shall, within thirty days thereafter, himself or by his agent serve upon a city or town clerk a written claim to such office or a declaration of an intention to contest the election of any other person, the clerk shall retain the envelopes or containers containing the ballots for such office until such claim is withdrawn or the contest is determined. The envelopes or containers and ballots shall be subject to the order of the body to which such person claims to be elected, or of the officers required by law finally to examine the records and to issue certificates of election to such office, or of any court having jurisdiction thereof. Such body or officers may require the clerk to produce such envelopes or containers and ballots, and may recount the ballots and amend any record or copy thereof in relation to such office."

[4] In pertinent part § 135 reads: "A petition for a recount may be filed with the city or town clerk on or before five o'clock in the afternoon on the third day following a primary or preliminary election, or on or before five o'clock in the afternoon on the seventh day following an election, in a ward of a city or in a town, if ten or more voters of such ward or town, except a town having more than twenty-five hundred voters and voting by precincts and except Boston, and in such a town voting by precincts ten or more voters of each precinct in which a recount is petitioned for and in Boston fifty or more voters of a ward, shall sign in person as registered, adding thereto their respective residences on the preceding January first, or their residence when registered if subsequent thereto, and the place where such person is then living, with the street and number, if any. . . .

"[T]he city or town clerk shall forthwith transmit such petition and statement, and the envelopes or containers containing the ballots cast, sealed, to the registrars of voters, together with the original tally sheets.

"The registrars shall first examine the petition and statement and attach thereto a certificate of the number of names of subscribers which are names of registered voters in such ward, precinct or town and shall then, without unnecessary delay, but not before the last hour for filing petitions for recounts as aforesaid, open the envelopes or containers, recount the ballots cast and determine the questions raised, and shall examine all ballots cast by or for challenged voters and reject any such ballot cast by or for a person found not to have been entitled to vote. They shall endorse on the back of every ballot so rejected the reason for such rejection and said statement shall be signed by a majority of said registrars. A member of the board of registrars shall endorse over his signature on the back of each protested ballot the block number of which it is a part and the office for which the vote is protested, together with the name of the candidate for whom the vote is counted."

among the defined persons.  Accordingly, he was without standing to ask for the order and the Superior Court was without power to issue the order when it was issued.

We now consider the demurrer which rests mainly on the ground that there is no jurisdiction in a court of equity to declare an election void.  This ground is decisive of the case.  The conduct of elections and election contests is controlled entirely by statute.  See *Abbene* v. *Board of Election Commrs. of Revere,* 348 Mass. 247, 249, and cases cited. Unless the Legislature has granted to the Attorney General the right to the relief here sought he is not entitled to it, and the court may not grant it.

Our statutes authorize judicial action in an election in several specific ways.  For example, the counting of absentee ballots in municipal elections may be required or enjoined by a bill in equity under G. L. c. 54, §§ 103–103A. The court also may review by mandamus the legality of a contest as conducted by the local officials charged therewith under c. 54, §§ 134–135, *Swift* v. *Registrars of Voters of Milton,* 281 Mass. 264, 270, or may entertain an information by the Attorney General in the nature of quo warranto "against a person holding or claiming the right to hold an office or employment, the salary or compensation of which is payable by the commonwealth, a county, city or town." G. L. c. 249, § 12.  *Attorney Gen.* v. *Sullivan,* 163 Mass. 446. *Brierley* v. *Walsh,* 299 Mass. 292, 294–295.  *Attorney Gen.* v. *Goldberg,* 330 Mass. 291, 292.  Where corrupt practices are at issue, an election petition may be filed with the Superior Court under c. 55, § 28.  Where violations of the election laws are alleged, a District Court may hold an inquest under G. L. c. 55, § 31.  Appropriate criminal penalties against violators may be sought by the Commonwealth under the several provisions of G. L. c. 56.  Finally, G. L. c. 56, § 59, gives to the Supreme Judicial Court and the Superior Court jurisdiction "at law, in equity or by mandamus to enforce the provisions of chapters fifty to fifty-six, inclusive."

The Attorney General relies on G. L. c. 56, § 59, as a basis of jurisdiction for his bill.  We think that the reliance

is misplaced. The bill is not directed to the enforcement by any of the defendants of any specific provisions of cc. 50–56, inclusive. It cites no provisions of the designated chapters which have been violated or not complied with and which the defendants could be required to enforce.

Since there is no statute which authorizes the Attorney General to proceed as he has here undertaken to proceed and since the statutes afford adequate remedy to those who are entitled to have recourse to them, it follows that the demurrer to his bill was properly sustained.

Our view of the jurisdictional question appears to be shared by the courts of other States which have considered it. Although election laws vary from place to place, other courts almost invariably hold that a bill in equity to void an election may not be maintained in the absence of a statute expressly conferring jurisdiction to do so or where there is a statute which otherwise prescribes the methods for conducting election contests. The deep seated reasons of policy against the exercise of equity jurisdiction were discussed at length in *Dickey* v. *Reed,* 78 Ill. 261. See *Cleveland Cliffs Iron Co.* v. *Village of Kinney,* 262 Fed. 980 (D. Minn.); *Kinman* v. *Monk,* 179 Ga. 132; *Bell* v. *South Cook County Mosquito Abatement Dist.* 3 Ill. 2d 353; *Link* v. *Karb,* 89 Ohio St. 326, 343–344; *Harries* v. *McCrea,* 62 Utah, 348, 356. A bill in equity has been allowed as a means of contesting a vote to relocate a county seat where no statutory machinery has been established to contest such a vote. *Orchard* v. *Board of Commrs. of Sierra County,* 42 N. M. 172. But in a similar case *Markert* v. *Sumter County,* 60 Fla. 328, 329, it was said, "The absence of a statutory mode of contest does not give equity jurisdiction." See *Hickenboatom* v. *County Court of Wood County,* 95 W. Va. 253, 262 (dictum) (road bond referendum). In *Neiser* v. *Thomas,* 99 Mo. 224, 228, the court, in dictum, stated that a bill in equity might be permitted to supplant the statutory contest procedure but only in extraordinary cases. See also *Hellertown Borough Referendum Case,* 354 Pa. 255. In *Duggan* v. *Emporia,* 84 Kans. 429, 436–437,

the court declined to follow *State ex rel. Lewis* v. *Eggleston,* 34 Kans. 714, where it had been held that a court in equity had jurisdiction to void an election.

Since the judge's disposition of the demurrer correctly disposed of the case, we need not consider the pleas in abatement. The interlocutory decree sustaining the demurrer is affirmed. A final decree is to be entered dismissing the bill as against all the defendants.

*So ordered.*