JOHN E. SWIFT *vs.* BOARD OF REGISTRARS OF VOTERS OF MILTON & another.

SAME *vs.* SAME.

Norfolk.    December 15, 1932. — December 22, 1932.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & LUMMUS, JJ.

*Elections*, Recount: destroyed ballots. *Mandamus. Equity Jurisdiction.*

The mere fact that, after the counting of votes cast in a town at a State election, their return to the town clerk and the transmission of his record to the Secretary of the Commonwealth and before the beginning of a recount had on application of a candidate defeated on the face of the returns, over fifteen hundred ballots in one precinct were innocently destroyed through accident and mistake so that the town clerk could not deliver them to the board of registrars of voters for the purpose of the recount, did not require that the ballots so destroyed, or the ballots for the entire precinct, or the ballots for the entire town, should become a nullity; and it was proper for the board to make return after recount that the ballots destroyed "had been destroyed by mistake" and that "the figures turned in by the precinct officers for the missing . . . ballots were added to" their count of the other "ballots [for that precinct] and made no change in the original figures as compiled by the election officers on the day of election."

The proper procedure for procuring relief respecting an improper count of ballots by a board of registrars of voters after a petition for a recount is by a petition for a writ of mandamus and not by a bill in equity.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Norfolk on November 22, 1932, against the board of registrars of voters and the town clerk of the town of Milton, seeking to have the board of registrars enjoined from making and signing any statement or certification of their alleged determination of the issues raised in the recount held

on November 21, 1932, and described in the opinion and from returning such statement to the town clerk; and to have the town clerk enjoined from recording as the official returns the alleged recount of the ballots delivered by him to the board of registrars and "ordered to cancel and expunge any and all alleged records of tabulation of the votes cast in the said town of Milton for the several candidates for the office of Lieutenant Governor." Also a

PETITION, filed in the same court on December 2, 1932, against the same parties for a writ of mandamus directed to the clerk of the town of Milton commanding him to certify that the vote of the said town of Milton cannot be determined; and to the said board of registrars "to amend the certificate of their determination that the vote of said town of Milton cannot be determined."

A petition by Gaspar G. Bacon, who was the successful candidate against the petitioner on the face of the returns, for leave to intervene as a party, was allowed in the mandamus proceedings and was denied in the suit in equity, in which, however, he was given leave to participate as *amicus curiae.*

The two proceedings were consolidated and were heard by *Wait*, J., who reserved and reported them for determination by the full court. Material facts are stated in the opinion.

*F. L. Simpson,* (*H. T. Talty* with him,) for the plaintiff, petitioner.

*L. Bryant,* for the defendants, respondents.

*J. Hannigan,* for Gaspar G. Bacon, intervening respondent in proceedings for mandamus.

*J. Hannigan,* by leave of court, submitted a brief as *amicus curiae* in the suit in equity.

RUGG, C.J. The petitioner seeks review of a recount made by the board of registrars of voters in the town of Milton, and an order that they be directed to reject certain ballots counted by them.

The relevant facts are these: The petitioner was a candidate for the office of Lieutenant Governor at the State election held on November 8, 1932. The respondents constitute the board of registrars of voters of the town of

Milton. The returns of the election officers in the several precincts in the town of Milton showed a total vote of eight thousand seven hundred twenty-seven, of which three thousand one hundred six were cast in precinct 2. Copy of the original record of all votes cast in the town for that office was on or about November 10, 1932, transmitted "to the State secretary" by the town clerk. G. L. (Ter. Ed.) c. 54, § 112. A petition for recount of the votes cast for Lieutenant Governor was seasonably filed and recount was had. At the time set for the recount the town clerk delivered to the board of registrars of voters, of which he was a member, the used ballots in his possession on that day for the purposes of the recount. He was unable to hand to them fifteen hundred six of the ballots cast for this reason: The precinct officers of precinct 2 duly counted the ballots cast and made return of the result in proper form. After the counting they filled with sixteen hundred used ballots, contained in envelopes or packages numbered one to thirty-two inclusive, a wooden box, supplied them by the town clerk as an envelope for the used ballots. This box was padlocked. Being unable to get all the used ballots into the box, they put envelopes or packages numbered thirty-three to sixty-three inclusive of used and canvassed ballots, containing in all fifteen hundred six ballots, in one or two of the cartons in which official ballots had been received, and which had been emptied during the balloting. Only used ballots were so placed in the carton or cartons. The carton or cartons were marked "used ballots" and were securely tied. The wooden box, the ballot box, the carton or cartons containing fifteen hundred six used ballots, and other cartons containing ballots, delivered by the town clerk to the precinct officers, which were not used or marked in balloting, were duly delivered to the police in attendance and returned to the town clerk. G. L. (Ter. Ed.) c. 54, § 107. The used and unused ballots from all the precincts were transferred to the town clerk between 9 and 11 P.M. of November 8 and were placed in an outer portion of his office to which any one had access. The town clerk made no examination of the articles returned to him by the police, and

was ignorant that any used ballots were in any of the cartons. In such ignorance, and believing that such cartons and their contents were of no value or use, he permitted and authorized the superintendent of the town hall to remove and destroy all the cartons, and on Thursday, November 10, 1932, not knowing what was in them, the superintendent burned the cartons with their contents. The clerk of precinct 2 duly delivered to the town clerk the copies of the records made by him and certified by the precinct officers which are required by G. L. (Ter. Ed.) c. 54, § 105. The town clerk and selectmen pursuant to § 111 of that chapter examined said copies, found no error, and made them part of the record of the election. The registrars of voters duly made a recount of all the ballots cast in the other precincts in the town and made return of their recount of the votes cast for Lieutenant Governor. In that return they stated: "In Precinct 2 we recounted 1600 ballots out of a total of 3106 ballots cast as the other 1506 ballots had been destroyed by mistake. The count on the 1600 ballots was Bacon 1030, Becker 3, Dawson 0, Hutchins 8, Swift 514, Blanks 45 and the figures turned in by the Precinct Officers for the missing 1506 ballots were added to our count of 1600 ballots and made no change in the original figures as compiled by the Election Officers on the day of election." The result of the entire recount according to the return was that there was no change in the total number of votes cast, no change in the total number of votes cast for the petitioner, the number of votes cast for each of two other candidates was reduced by one, the number of votes cast for still another candidate was increased by one, the number of blanks was increased by one and no change was made in precinct 2. All the defendants including the town clerk acted in good faith and the destruction of the fifteen hundred six ballots used in the election was by accident and mistake. These facts being either agreed by the parties or found by the single justice without report of the evidence must be accepted as true.

The ballots cast in the election when returned to the town clerk were not guarded from the possibility of unauthorized

interference as securely as is to be desired, G. L. (Ter. Ed.) c. 54, § 109, but there is no foundation for argument that in fact there was any tampering with them. Except for the accidental destruction of the fifteen hundred six ballots cast in precinct 2, all were turned over to the respondents for recount in the same condition as when first removed from the ballot boxes.

The question for decision is the effect upon the recount and the result of the election in the town of Milton, so far as concerns the vote for Lieutenant Governor, of the accidental destruction of a part of the ballots cast in precinct 2 in the circumstances already narrated.

Proceedings for a recount of votes cast at an election are strictly statutory. They are of no effect unless authorized, begun and conducted as provided by the statute. *Eldridge* v. *Selectmen of Chatham,* 192 Mass. 409, 411. The function of the registrars under the governing statute, G. L. (Ter. Ed.) c. 54, § 135, in a case like the present is to make the recount and sign "a statement of their determination of the questions raised." It then becomes the duty of the town clerk to "alter and amend, in accordance with such determination, such records as have been found to be erroneous." The record originally returned, as examined and corrected under G. L. (Ter. Ed.) c. 54, § 111, stands as the correct statement of the vote except as changed by the report of the registrars under § 135. The registrars have made no change in the original return for precinct 2. They found no error in that return.

The main purpose of the election statutes is to provide a convenient method for the voter qualified according to law to express in secret his preference for persons to be elected to the several offices to be filled and on the questions to be answered at an election and to have that expression of preference counted fairly and honestly, all in conformity to reasonable regulations. The statutes of this Commonwealth contain in great detail requirements as to the preparation and distribution of ballots, the marking and deposit of them in ballot boxes, the counting of those ballots and the making of official returns of the results of the voting. *Cole* v. *Tucker,* 164 Mass. 486. *O'Brien* v. *Election Commissioners of Boston,*

257 Mass. 332, 338. "As stated by Andrews, C.J., in *People* v. *Wood*, 148 N. Y. 142, 147, 'The object of elections is to ascertain the popular will and not to thwart it. The object of election laws is to secure the rights of duly qualified electors and not to defeat them.' This must be borne in mind in the construction of such statutes, and the presumption is that they are enacted to prevent fraud and to secure freedom of choice, and not by technical obstructions to make the right of voting insecure." *Blackmer* v. *Hildreth*, 181 Mass. 29, 31. *Attorney General* v. *Campbell*, 191 Mass. 497, 502. *Wheeler* v. *Carter*, 180 Mass. 382.

The record in the case at bar discloses nothing irregular in connection with the election. The ballots were lawfully cast and counted and returned, and the results declared with all the safeguards required by the law and under all its presumptions as to correctness. Thereafter but before the petition for recount was filed, some of the ballots thus cast were innocently destroyed by accident and mistake. No fraud is disclosed. No intent on the part of anybody to interfere with a recount or to affect the operation and result of the election is revealed. To hold that these entirely guiltless acts invalidate the votes of precinct 2 would have the effect of disfranchising at least fifteen hundred six voters or, according to other suggestions made in argument, all the voters of that precinct or of the entire town. Such a result would be unnatural. It would violate fundamental conceptions as to the operation of democratic institutions and the safety of our form of government.

The statutes do not require any conclusion of that nature. The right to a recount is secured to specified numbers of voters under G. L. (Ter. Ed.) c. 54, § 135. That right must be given all the protection accorded to it by the General Court. But it does not mount higher than the election itself. It arises subsequently to the election. It has no essential connection with the election. The statutes cannot rightly be interpreted to accomplish the disfranchisement of hundreds and perhaps thousands of voters who have complied with every provision of the law, who are entitled to have force and effect given to their votes and whose votes have been once

counted and returned under all the sanctions provided by the election law. An innocent although unfortunate accident and mistake has intervened to prevent the recount of all the votes in precinct 2 of Milton as required by law. The statute contains no express provision concerning such a situation. The general principle of the law of elections is against disfranchisement of the voter who has complied with the statute in these circumstances. Every intendment of the law is to give effect to the expression of the will of the voters, notwithstanding incidental irregularities in the election, unless they are of such nature as to render doubtful the true interpretation of that expression. *Pevey* v. *Aylward*, 205 Mass. 102, 107. *Parrott* v. *Plunkett*, 268 Mass. 202, 205–206, and cases there reviewed. To press the right to a recount established by said § 135 to the technical extreme here urged would violate underlying ideas concerning free institutions. It is not required or permitted by a reasonable construction of the election statutes as a whole. The design of the recount is to verify, not to destroy, the result of an election as previously declared by the election officers. Where without culpability verification has become impossible as to any part of an election that part of the election does not become a nullity.

The original count of the votes in the town of Milton as returned by the precinct officers and corrected will stand as true under G. L. (Ter. Ed.) c. 54, § 111, except as amended by the determination of the registrars of voters made under said § 135.

The respondents with respect to the recount acted in conformity to law and no error is disclosed on this record.

The petitioner brought a suit in equity and also a petition for a writ of mandamus, both to obtain the same relief. They have been consolidated for the purpose of being heard together. *Lumiansky* v. *Tessier*, 213 Mass. 182. It seems apparent that the appropriate proceeding for an inquiry such as is here raised is by mandamus and not in equity. *Flanders* v. *Roberts*, 182 Mass. 524, 529, and cases cited. *Brewster* v. *Sherman*, 195 Mass. 222, 225, and cases cited. *Perry* v. *Hull*, 180 Mass. 547, is there distinguished. Those cases

were decided when the statute was so far as here material the same as that now in force.   G. L. (Ter. Ed.) c. 56, § 69. Compare St. 1898, c. 548, § 417; R. L. c. 11, § 421.

*Bill dismissed.*

*Petition dismissed.*