JOSEPH B. CLANCY *vs.* JOHN R. WALLACE & others.

Essex.     December 12, 1934. — December 18, 1934.

Present: RUGG, C.J., CROSBY, DONAHUE, & LUMMUS, JJ.

*Elections*, Recount. *Mandamus. Lynn. Waiver.*

Upon a report and reservation by a single justice of this court, without decision, for determination by the full court of a petition for a writ of mandamus upon the pleadings and an agreed statement of facts, no question of discretion is involved, the sole question being, whether as a matter of law upon the record the writ should issue.

By reason of the provisions of St. 1931, c. 92, creating the board of election commissioners of Lynn, a special act applying solely to that city, if the commissioners, after receiving petitions for a recount, verify the signatures of the voters thereon and find the proper number of signatures, they are not under a duty to make the certificate prescribed by G. L. (Ter. Ed.) c. 54, § 135, as amended by St. 1933, c. 270.

The election commissioners of Lynn gave to the applicant for a recount of votes a notice in writing that a recount of the votes in certain wards would be held on a certain day which was less than three days after the notice, and, during the recount so held, orally gave notice of a recount of votes in the remaining wards. The applicant protested that the notice given did not comply with the requirements of G. L. (Ter. Ed.) c. 54, § 135, as amended by St. 1933, c. 270, but he did not ask for a delay nor seek to obtain relief in court under G. L. (Ter. Ed.) c. 56, § 69, attended the recount throughout, and did not show that he suffered any harm through the failure to give him the statutory notice. *Held*, that

(1) The applicant as a matter of law waived whatever informality there was as to notice;

(2) The applicant was not entitled, upon a petition for a writ of mandamus, to have the recount set aside because of the lack of statutory notice to him.

The recount above described was held in the council chamber of Lynn. Ten tables were arranged in a semicircle two feet inside a rail. Two tellers were at each table. One of them, seated with his back to the railing, inspected each ballot, the ballots being within view of persons outside the railing, and called off the votes recorded thereon, which were tabulated by the teller sitting on the opposite side of the table. Tabulation from the block tally sheets to the total tally sheets was performed upon a rostrum at the back of the council chamber within the railing and twenty to twenty-five feet therefrom. Requests by the applicant for recount that he or a representative be allowed within the railing and at the tables, and that he be allowed to see the original tally sheets made by the election officers at the election and the tally sheets made by the tellers at the recount, were refused. The commissioners announced publicly that the original tally sheets might be examined at their office after the recount was completed and that the candidates and their representatives were entitled to be at the railing in the space outside. There were many persons present at the recount, which was conducted by the commissioners honestly and in good faith. *Held*, that

(1) The regulations adopted by the election commissioners in view of all the conditions confronting them were reasonable and conduced to the orderly conduct of the recount;

(2) There was compliance with the requirements of G. L. (Ter. Ed.) c. 54, § 135, as amended by St. 1933, c. 270, that "each . . . candidate or person representing petitioners . . . shall be allowed to be present and to witness such recount at any table where a recount of the ballots affecting such candidate is being held, either in person, accompanied with counsel if he so desires, or by an agent appointed by him in writing."

Failure of election commissioners to observe the requirements of G. L. (Ter. Ed.) c. 54, § 135, as amended by St. 1933, c. 270, that "blanks cast" respecting an office which is the subject of a recount shall be counted did not render the recount invalid where such omission did not affect the accuracy of the recount.

Statutory provisions as to elections must be interpreted on the theory that they are enacted to prevent fraud and mistakes and to secure freedom of choice; they are not to be so construed as to make the rights of voting and of having the votes ultimately counted with accuracy subject to technical obstructions not affecting the merits of the election. Per RUGG, C.J.

PETITION, filed in the Supreme Judicial Court for the county of Essex on November 19, 1934, averring invalid a recount in Lynn of votes cast at the election on November 6, 1934, for State senator in the First Essex Senatorial District, upon which Albert Cole was declared elected

instead of the petitioner, who had been reported elected by the original count, and seeking a writ of mandamus directing the board of election commissioners of Lynn not to alter and amend the original returns made by them on November 6 and 7, wherein the petitioner was declared elected, and that the record then made should stand as the true record of the election.

Albert Cole was allowed to intervene in the proceedings. Material facts are stated in the opinion.

The petition was heard by *Field*, J., on the pleadings and an agreed statement of facts, and was reported without decision and reserved for determination by the full court.

The case was submitted on briefs.

*F. L. Simpson & H. C. Mamber*, for the petitioner.

*P. F. Shanahan*, City Solicitor, *& J. M. Cashman*, Assistant City Solicitor, for the respondents.

*H. Parker & H. Hormel*, for the intervening respondent.

RUGG, C.J. This is a petition for a writ of mandamus. Without decision or ruling the case was reserved by the single justice upon the pleadings and agreed statement of facts for the determination of the full court. On a reservation of this nature no exercise of discretion is involved. The question presented is whether upon the facts and the pleadings the writ of mandamus ought to issue as matter of law. *School Committee of Lowell* v. *Mayor of Lowell*, 265 Mass. 353, 354, and cases cited. *Shawmut Mills* v. *Board of Assessors*, 271 Mass. 358, 360. *Cochran* v. *Roemer*, 287 Mass. 500, 502.

The pertinent facts are these: The petitioner and Albert Cole, who has been allowed to intervene in this proceeding, were the only candidates for the office of senator for the First Essex Senatorial District at the election held on November 6, 1934. That district is composed of the city of Lynn and the towns of Nahant and Swampscott. According to the returns of the election officers the petitioner was shown to be elected. Petitions were filed on November 8, 1934, by the intervener, Cole, with the election commissioners of the city of Lynn, who are the respondents, for recounts in the several wards of that city. According

to the results of that recount, in connection with the returns from the two towns, the intervener was shown to be elected. Those petitions were on forms furnished by the election commissioners and each bore the signatures of ten or more voters together with their residences; each was verified by the affidavit of one of the signers. Upon receipt of those petitions the election commissioners compared the names and addresses given thereon with the list of registered voters and on each petition put a check mark opposite the name of at least ten subscribers whom they found to be registered voters in the ward for which the petition was filed. They did not annex any certificate of the number of names of subscribers on each petition which were the names of registered voters. On Monday, November 12, 1934, the election commissioners delivered to the petitioner and to the intervener a written notice that the recount would be held on the evening of Wednesday, November 14, 1934, for wards 2, 3 and 4, and on Tuesday, November 13, 1934, the election commissioners mailed to the petitioner and the intervener a letter stating that the recount had been postponed and would be held on Thursday, November 15, 1934. No other written notice was given, and no written notice was given as to the recount of votes to be held in wards 1, 5, 6 and 7. Recount was had of the votes in wards 2, 3 and 4 on Thursday evening, November 15, 1934, which was attended by both the petitioner and the intervener. At that recount the election commissioners orally announced publicly that a recount would be held of the votes in wards 1, 5, 6 and 7 on the following evening and the recount was so held. On November 15, 1934, the petitioner filed a written protest with the election commissioners against the recount because the statutory notice had not been given him. Recounts were actually held on the dates stated in the chamber of the city council of Lynn. Two tellers were at each of ten tables in recounting the votes. These tables were arranged in a semicircle approximately two feet inside of a railing separating the space generally occupied by the members of the city council when in session from an outer space of the council chamber. This railing was approxi-

mately sixty feet long and had a height of about three feet
above the floor. Each table was about four feet long. The
recount was conducted under the supervision of the elec-
tion commissioners by twenty tellers and two tabulators;
of these there were equal numbers of Democrats and Re-
publicans. One teller sat with his back to the railing and
inspected each ballot, such ballots being within the view
of persons outside of the railing, and called off the votes
recorded thereon which were tabulated by the teller sitting
on the opposite side of the table. The ballots were counted
in blocks of fifty. The tabulation from the block tally
sheets to the total tally sheets was performed upon a ros-
trum at the back of the council chamber within the railing
and twenty to twenty-five feet therefrom. Although re-
quested by the petitioner, the election commissioners refused
to allow him to see the original tally sheets made by the
election officers at the election or the tally sheets made by
the tellers at the recount. Public announcement was made
that the original tally sheets might be examined at the office
of the election commissioners after the recount was com-
pleted. At times ballots for thirteen candidates for several
offices were being recounted as well as those for the peti-
tioner and intervener. Those candidates as well as the
petitioner and intervener were present throughout the
recount. All the candidates, including the petitioner and
the intervener, and representatives of the candidates and
members of the public were required by the election com-
missioners to remain outside of the railing, and at times
that space was congested by the number of persons attend-
ing the recount including the several candidates and their
representatives. Although the petitioner requested that he
or his representative be allowed within the railing and at
the tables, this request was denied, but the election com-
missioners made public announcement that the candidates
and their representatives were entitled to be at the railing
in the space outside. Approximately thirty-five thousand
ballots were counted in the several wards of Lynn. The
recount of the ballots was conducted by the election com-
missioners honestly and in good faith.

The prayer of the petition for a writ of mandamus is that the election commissioners be directed not to alter or amend any returns originally made with reference to the votes cast for State senator in the First Essex Senatorial District and that that original record shall stand as the true record of the election.

The statutes pertinent to the questions to be decided are these: The board of election commissioners of the city of Lynn was established by St. 1931, c. 92. By § 1 it is provided: "The board of registrars of voters of the city of Lynn shall be abolished on November thirtieth of the current year or as soon thereafter as the members of the board of election commissioners, which is hereby established, shall qualify for office. Thereupon all the powers, rights, liabilities and duties of said board of registrars, either under general or special law, except as otherwise provided, shall be transferred to and shall thereafter be exercised by the said board of election commissioners, hereinafter called the board, which shall be the lawful successor of said registrars. . . ." By § 6 it is provided: "All the powers, rights, privileges, liabilities and duties relating to primaries, caucuses or elections by law vested in and imposed upon the mayor and city council or either of them, the city clerk, the city solicitor or the board of registrars of voters in cities, except the power and duty of giving notice of elections and fixing the days and hours of holding the same, shall in the city of Lynn be vested in and performed by the board, who shall be subject to all the penalties prescribed by general laws for failure to perform the said duties." It is provided by G. L. (Ter. Ed.) c. 54, § 135, as amended by St. 1933, c. 270, that "If, on or before five o'clock in the afternoon on the third day following an election in a ward of a city . . . ten or more voters of such ward . . . shall sign in person, adding thereto their respective residences on the preceding April first, and cause to be filed with the city . . . clerk a statement, bearing a certificate by the registrars of voters of the number of names of subscribers which are names of registered voters in such ward . . . and sworn to by one of the subscribers" stating grounds

for a recount, a recount shall be had and "The registrars shall, before proceeding to recount the ballots, give not less than three days' written notice to each of the several candidates whose names appear on the ballot for the office in question . . . and each such candidate or person representing petitioners as aforesaid shall be allowed to be present and to witness such recount at any table where a recount of the ballots affecting such candidate is being held, either in person, accompanied with counsel if he so desires, or by an agent appointed by him in writing . . . in the case of a recount of the ballots cast for an office, the votes cast for all of the candidates for such office, including blanks cast, shall be recounted."

1. The petitioner contends that the failure of the election commissioners to attach to the petitions for a recount a certificate "of the number of names of subscribers which are names of registered voters in such ward" in conformity to G. L. (Ter. Ed.) c. 54, § 135, as amended by St. 1933, c. 270, renders the recount invalid. Proceedings for a recount of votes are strictly statutory and are of no effect unless authorized by statute and in all essential particulars begun and conducted as the statute requires. *Eldridge* v. *Selectmen of Chatham*, 192 Mass. 409, 411. *Swift* v. *Registrars of Voters of Milton*, 281 Mass. 264, 268. It is an agreed fact that the petitions for recount in the case at bar each bore the signatures of ten or more voters in each ward together with their residences, and that the election commissioners compared and verified those petitions with the list of registered voters and found that ten signatures of such voters were actually attached to each petition, and they checked such signatures. It cannot be contended that there was any defect in the petitions. So far as concerns essentials, the petitions were in entire conformity to the requirements of the statute. It is to be observed that St. 1931, c. 92, creating the board of election commissioners was a special act applying solely to the city of Lynn and that the election commissioners thereby became vested with all the duties, obligations and powers respecting recounts theretofore vested in the city clerk and the

board of registrars of voters. The procedure under this statute with respect to a recount in Lynn therefore is different from that provided by G. L. (Ter. Ed.) c. 54, § 135, as amended by St. 1933, c. 270. Petitions for recounts in Lynn are not required to be filed with the city clerk but are to be kept by the election commissioners. The election commissioners, having rightly received the petitions for recount and having verified the signatures of the voters, were not under a duty to make the certificate for the records of any other office. If and so far as the special statute with respect to Lynn is inconsistent with the provisions of the general law, it is operative notwithstanding the general law. *Copeland* v. *Mayor & Aldermen of Springfield,* 166 Mass. 498, 504. *McKenna* v. *White,* 287 Mass. 495, 499, and cases cited. Such is the express provision of G. L. (Ter. Ed.) c. 50, § 6. The validity of the recount and the rights of the petitioner were not adversely affected by a failure to annex the certificate.

2. The object of the statutory requirement as to notice of a recount to candidates is to enable them to be present. If they attend, no notice is necessary. The election commissioners failed to comply with the statutory requirement of giving three days' written notice of the time for holding the recount to the petitioner and intervener. Both received actual notice in writing when the recount was to begin. Both were present at the recount. Actual notice received by a party affected by proceedings, although not in the form or through the channels prescribed, frequently has been held to be enough. *Morrison* v. *Selectmen of Weymouth,* 279 Mass. 486, 490, 491, and cases cited. *Bradley* v. *Zoning Adjustment Board of Boston,* 255 Mass. 160, 172. The petitioner protested against the lack of legal notice to him. He did not ask for delay in the recount. He did not then and does not now contend that he suffered any harm through the failure of the election commissioners to give the statutory notice. The agreed facts do not indicate any harm sustained by him. He did not forthwith seek to obtain relief in the courts according to the provisions of G. L. (Ter. Ed.) c. 56, § 69. He attended the recount throughout. So far

as appears, he has received in fact every advantage which the technically legal notice would have given. It would seem also that as matter of law, notwithstanding his protest, he may be held to have waived whatever informality there was as to notice. *Shutte* v. *Thompson,* 15 Wall. 151, 159. *Paige* v. *Sinclair,* 237 Mass. 482, 484. *Modist* v. *Lynch,* 277 Mass. 135. In these circumstances the petitioner is not entitled to have the recount set aside because of the lack of statutory notice to him.

3. There was no violation of the statutory requirement that candidates shall be allowed to be present and to witness the recount at any table where the recount is being held. Recounts ought to be so conducted that the possibility of interference with the ballots and with those conducting the recount may be reduced to a minimum. Every right of the petitioner was preserved by the decision of the election commissioners that all candidates and their representatives should remain outside the rail. Those standing outside the rail had every reasonable opportunity to observe each ballot, to verify the recount as it progressed and to see that no mistakes were made. They were near to and in plain sight of the tables where the recount was in progress. It was the duty of the election commissioners to safeguard in every practicable way the accuracy of the recount, and to protect the tellers from too close proximity to interested parties and their partisan supporters to the end that the will of the voters as expressed by the ballots might be accurately ascertained and correctly recorded. The regulations adopted by the election commissioners in view of all the conditions confronting them were reasonable and conduced to the orderly conduct of the recount. There was compliance with the statute in this regard.

4. Blank ballots for the office of State senator in certain wards were not counted although the statute requires the counting of such blanks. The petitioner does not appear to have made any objection to this procedure at the time of the recount although it must have been apparent to any observer. The blanks ought to have been counted in conformity to the terms of the statute. Its words so far as concerns the duty

of the election commissioners are mandatory.  *Milton* v. *Auditor of the Commonwealth,* 244 Mass. 93.  *McCarty* v. *Boyden,* 275 Mass. 91, 93.  The omission to count the blank ballots, however, did not affect the accuracy of the count of the ballots actually cast for the competing candidates.  So far as concerns the candidates, the requirement of the statute (to paraphrase slightly the words of Chief Justice Shaw in *Torrey* v. *Millbury,* 21 Pick. 64, 67, respecting the validity of a tax) was "intended to promote method, system and uniformity in the modes of proceeding, the compliance or non-compliance with which, does in no respect affect the rights of" the candidates.  As to them the statute as to counting blanks "may be considered directory"; officers failing to observe it may be liable to animadversion for not observing it but its "observance is not a condition precedent to the validity" of the recount.  *Cheney* v. *Coughlin,* 201 Mass. 204, 211, 212, and cases collected.  *Ashley* v. *Three Justices of the Superior Court,* 228 Mass. 63, 70.  *Trustees of Andover Seminary* v. *Visitors,* 253 Mass. 256, 280.  *Commonwealth* v. *Kossowan,* 265 Mass. 436, 438.  The statute does not mean that the omission on the part of the election commissioners to perform this part of their duty, which is quite disconnected with the accuracy of the count of the ballots actually cast for candidates, was intended to invalidate the recount.  The underlying reason for a recount is that the will of the voters as manifested by the ballots actually cast shall be truthfully and exactly found out and established.  The object of election laws, both as to the preparation and casting of ballots and as to the counting of them, whether by election officers or by recounting officers, is to ascertain the popular will and to secure the rights of the duly qualified electors.  Statutory provisions as to elections must be interpreted on the theory that they are enacted to prevent fraud and mistakes and to secure freedom of choice.  They are not to be so construed as to make the right of voting and having the votes ultimately counted with accuracy subject to technical obstructions not affecting the merits of the election on ascertained facts.  *Swift* v. *Registrars of Voters of Milton,* 281 Mass. 264, 269.  *Swift* v. *Regis-*

*trars of Voters of Quincy,* 281 Mass. 271, 277. *Parrott* v. *Plunkett,* 268 Mass. 202, 205–207. *People* v. *Hartwell,* 12 Mich. 508, 523, 524. This objection to the validity of the recount like the others is formal rather than substantial. See also G. L. (Ter. Ed.) c. 54, § 131. The record bears no indication whatever that the ballots for the petitioner and intervener were not correctly counted according to law.

All the arguments of the petitioner have been carefully considered. Nothing is disclosed to warrant the issuance of the writ of mandamus. *J. H. Wentworth Co.* v. *French,* 176 Mass. 442, 445.

*Petition dismissed.*

## MEMORANDUM.

On the nineteenth day of December, 1934, the Honorable STANLEY ELROY QUA, one of the Justices of the Superior Court, was appointed a Justice of this court. He took the oath of office on the same day and first sat with the court at the sitting in Boston for the Commonwealth on the seventh day of January, 1935.