COMMONWEALTH *vs.* DOMENIC A. PREVITE.

SAME *vs.* SAME.

Suffolk.    October 7, 1935. — November 9, 1935.

Present: RUGG, C.J., PIERCE, FIELD, LUMMUS, & QUA, JJ.

*Food. Evidence*, Competency, Analysis of food.

Proof of the delivery of misbranded olive oil to a food inspector or other person who was not deceived by the misbranding did not support conviction on a complaint brought under G. L. (Ter. Ed.) c. 94, §§ 187, 191, alleging that the defendant delivered olive oil branded so as to deceive the purchaser.

A blend of fifteen per cent Italian olive oil with eighty-five per cent domestic cotton seed oil, labelled as "Superfine Imported Olive Oil Guaranteed Pure," "Antonio Previte & Figlio, Messina (Italy)," and a blend of twenty per cent imported olive oil with eighty per cent domestic cotton seed oil, labelled "Lucca," "Olive Oil Highest Quality," purported to be foreign products and were misbranded under G. L. (Ter. Ed.) c. 94, § 187, though both labels bore the word "Blended."

At the trial of a complaint under G. L. (Ter. Ed.) c. 94, §§ 187, 191, for delivery of misbranded olive oil, the result of analysis made under § 189 was admissible on proof that inspectors, acting under § 188, obtained a gallon can of the oil, opened it, filled two four-ounce bottles from the contents, sealed them and the can, numbered all three, returned the can and one sample and took away the other; or that the inspectors obtained a gallon can of the oil, opened it, filled a four-ounce bottle from the contents, sealed and numbered the bottle and the can, left the bottle and took away the can.

TWO COMPLAINTS, received and sworn to in the Municipal Court of the City of Boston on February 26, 1935.

Upon appeal to the Superior Court, the cases were heard upon an agreed statement of facts by *Hobson,* J., a judge of a district court sitting in the Superior Court under statutory provisions, who found the defendant guilty on both counts

of both complaints, and reported the cases for determination by this court.

*H. J. Booras*, (*J. E. Edgerly* with him,) for the defendant.

*A. F. Iovino*, Assistant District Attorney, for the Commonwealth.

LUMMUS, J. This case was heard by a judge sitting without jury under G. L. (Ter. Ed.) c. 263, § 6. It was presented on agreed facts, which denied to the court any power to draw inferences. *Cunningham* v. *Connecticut Fire Ins. Co.* 200 Mass. 333. The defendant kept in cans for sale oil known as Previte Brand Olive Oil. Although the label bore the word "blended," it bore also the words "Superfine Imported Olive Oil Guaranteed Pure," and the words "Antonio Previte & Figlio, Messina (Italy)." The oil was in fact a blend containing fifteen per cent of olive oil imported from Italy and eighty-five per cent of cotton seed oil produced in America. It was blended and packed in Boston. The price was $1.10 a gallon, whereas pure imported olive oil sold for $2.25 a gallon. Inspectors of the department of public health asked the defendant for a can of Previte Brand Olive Oil, and were offered a can of the blended oil. They opened the can, and from it filled two four-ounce bottles, which they sealed as well as the can, giving all an identifying number. One bottle and the can were left with the defendant, but later the inspectors returned and removed the can. They did not buy or intend to buy the samples or the can, but acted under the power conferred by G. L. (Ter. Ed.) c. 111, § 9. This occurrence was the basis of one of the complaints before us, on which the defendant was found guilty.

The other complaint, on which also a finding of guilty was made, was based on the following facts. The defendant sold to Joseph Basile for $1.15 a gallon can of oil, which was a blend containing twenty per cent of imported olive oil and eighty per cent of domestic cotton seed oil. The label on this can bore the word "Lucca" (the name of a city in Italy), and the words "Olive Oil Highest Quality" preceded in a different line in much smaller letters by the word "blended." The same inspectors bought the can from Basile for $1.50. In the presence of Basile they opened the can and from it

filled a four-ounce bottle which they sealed as well as the can, giving both an identifying number. The bottle was left with Basile, and the can was taken by the inspectors for analysis. Four ounces of oil is enough for proper analysis.

The complaints are respectively for offering to deliver and for delivering an article of food (G. L. [Ter. Ed.] c. 94, § 191) misbranded within the meaning of § 187. The article of food was described as "olive oil." It would have been better to describe it simply as "oil," and that would have foreclosed the argument that there was no misbranding because the olive oil contained in the blend was in fact genuine imported olive oil which complied with the highest possible construction of the label. But the article of food intended by the complaint, though called "olive oil," obviously was the blended oil and not one ingredient by itself.

The second count in each complaint alleges that the oil was misbranded because "labelled and branded so as to . . . deceive and mislead the purchaser." This count was based on a part of § 187 which was intended to protect the particular purchaser from deception, and was not directed at a package or label which "bears any statement, design or device regarding the ingredients or substance contained therein which is false or misleading in any particular." That is dealt with later in the same section. The facts do not sustain a conviction under the second count. Basile and the inspectors were not purchasers deceived or misled.

The first count in each complaint alleges that the oil was misbranded because "falsely branded as to the State and Country where the same was . . . manufactured." The defendant does not contend that this was not sufficient as an allegation that the oil purported "to be a foreign product when not so," under § 187. The labels, fairly construed, falsely represented that the oil was wholly a product of Italy. But the domestic origin of the principal ingredient could not be proved except by the analysis made under § 189, and the defendant reserved his objection to the admissibility of the analysis. It becomes necessary, therefore, to deal with this question of evidence.

G. L. (Ter. Ed.) c. 94, § 189, provides that "no evidence of the result of such analysis or test shall be received if the agent described in the preceding section has refused or neglected to seal and deliver the sample, or part thereof, if and as required in the preceding section." That section (§ 188) provides: "If practicable, samples shall be collected in duplicate, or divided into two substantially equal parts, and each part shall be labelled with identifying marks. One of such parts or samples shall be delivered to the person from whom they were taken . . . Parts of samples divided as hereinbefore provided shall be sealed by said agent, at the time of the taking thereof, as provided by the regulations of the department of public health, with a seal provided for that purpose." The defendant contends that the analysis could not be shown because the statute was violated. The person from whom the samples were taken got only four ounces out of a gallon, although the general purpose of the statute to give that person enough for analysis was satisfied.

The statute cannot be held wholly directory, like the statute in *Commonwealth* v. *Taylor*, 132 Mass. 261 (see also *Commonwealth* v. *Wilkins*, 243 Mass. 356), for compliance with the provision for sealing and delivering a sample or part thereof is expressly made a condition of admissibility. *Commonwealth* v. *Lockhardt*, 144 Mass. 132. The condition is not restricted, as in certain liquor cases, to the introduction of the written analysis itself. *Commonwealth* v. *Kendrick*, 147 Mass. 444. *Commonwealth* v. *Slavski*, 245 Mass. 405, 413, *et seq.* *Commonwealth* v. *Stoler*, 259 Mass. 109. *Snyder* v. *Massachusetts*, 291 U. S. 97, 107. Unless there is compliance with the statutory provision "no evidence of the result of such analysis or test shall be received." § 189. Neither is the condition restricted, as it may be in the milk statute (G. L. [Ter. Ed.] c. 94, § 35), to the analysis of samples seized as distinguished from samples purchased. *Commonwealth* v. *Coleman*, 157 Mass. 460. Although the statute as to food and drugs contains provisions for the seizure of samples as well as for the purchase of them (G. L. [Ter. Ed.] c. 94, § 188; c. 111, § 9), the provision that the result of an analysis shall not be admissible unless there has been

compliance with the statutory condition applies to all samples, however obtained. St. 1910, c. 416. St. 1917, c. 208, §§ 4, 5. G. L. (Ter. Ed.) c. 94, §§ 188, 189.

But it is to be noticed that the statutory condition of admissibility is that the agent "seal and deliver the sample, or part thereof, if and as required in the preceding section." § 189. We think that the preliminary division of the sample, "if practicable," into "two substantially equal parts" is not included in the condition, but is a merely directory provision. *Commonwealth* v. *Taylor*, 132 Mass. 261. Likewise the requirement of § 188 that "the accompanying printed or written matter shall be noted by such agent" is directory only, and confers no right on the defendant. *Clancy* v. *Wallace*, 288 Mass. 557, 566. The provisions of § 189 for preliminary notice and hearing before making complaint are likewise directory. *United States* v. *Morgan*, 222 U. S. 274. If compliance in every respect with the provisions of these statutes was intended to be a condition precedent to the maintenance of any prosecution, we should expect the statute to say so in plain words.

Accordingly there was no error in the conviction of the defendant on the first count of each complaint. The judgment on the second count of each complaint is reversed, and judgment for the defendant is to be entered instead. On the first count of each complaint the judgment is affirmed.

*So ordered.*