FRANKLIN S. FELCH *vs.* REGISTRARS OF VOTERS OF SALISBURY & others.

Essex.   April 3, 29, 1957. — May 3, 1957.

Present: WILKINS, C.J., RONAN, SPALDING, COUNIHAN, & CUTTER, JJ.

*Elections.*

Failure to comply with the requirements of G. L. (Ter. Ed.) c. 54, § 135, as amended, that upon a recount of the vote in a town on a question appearing on the ballot at an election a "member of the board of registrars . . . endorse over his signature on the back of each protested ballot the block number of which it is a part" and the question

"for which the vote is protested, together with" a statement of how "the vote is counted," and that upon completion of the recount the registrars "make and sign a statement of their determination of the questions raised," nullified the recount; the vote as recorded in the original return must stand.

PETITION for a writ of mandamus, filed in the Superior Court on November 19, 1956.

Certain persons were allowed to intervene. The case was heard by *Morton, J.*

*Benjamin Goldman,* (*Norman Espovich* with him,) for the interveners.

*Louis A. Cyr,* (*William H. Gleed* with him,) for the petitioner.

SPALDING, J. At the biennial State election held on November 6, 1956, one of the questions appearing on the ballot in the town of Salisbury, in conformity with G. L. (Ter. Ed.) c. 138, § 11, as appearing in St. 1947, c. 138, § 3, was: "C. Shall licenses be granted in this city (or town) for the sale therein of all alcoholic beverages in packages, so called, not to be drunk on the premises?" The official return of the votes on this question showed 776 in the affirmative and 778 in the negative. Thereafter a petition for a recount was duly filed by certain citizens of the town. On November 13 a recount was conducted by the board of registrars which continued until its completion in the early morning of November 14. The corrected vote resulting from the recount was reported by the registrars to be 770 votes in the affirmative and 762 votes in the negative. Representatives of groups favoring and opposing package store licenses were present at the recount and many ballots were protested.

A citizen and taxpayer of the town, hereinafter called the petitioner, thereupon brought this petition for a writ of mandamus against the board of registrars of the town. The petitioner alleged certain irregularities in the conduct of the recount and asked that the registrars be ordered to count certain ballots as having been voted on the negative of question C; in the alternative the petitioner asked that the registrars be ordered to reject the result of the recount

and to certify that the original return be accepted as the true result of the election. A group of persons in favor of package store licenses were allowed to intervene and will hereinafter be referred to as the interveners.

After a hearing the judge ordered judgment to be entered "commanding the registrars . . . to record the vote on the issue in question as 770 in the affirmative and 776 in the negative." From a final judgment entered in accordance with this order the interveners appealed. There was no appeal by the registrars. The judge made findings of material facts and the evidence is reported.

1. A demurrer to the petition, which was overruled, contained several grounds but the interveners press only one before us. They contend that the petition was defective because it failed to allege "that the change in the recount would result in a reversal of the votes so that the Nos would win." But this need not concern us, for in the view we take of the case the entire recount is a nullity, and the petition alleged enough to support a decision on that ground.

2. Pertinent findings and rulings of the judge are as follows: There were forty-six protested ballots, but, except as to seventeen, he was unable to determine how these were counted on the recount as the registrars "did not, in compliance with . . . [G. L. (Ter. Ed.) c. 54, § 135, as amended], indicate thereon, or sign a statement of, their determination of the questions raised." [1] Fourteen ballots were counted as blanks but the judge was of opinion that they should have been counted as negative votes. Accordingly he ruled that these votes should be added to the number which the registrars had recorded for the "No" vote. As a result of this ruling the corrected vote stood 770 for the affirmative and 776 for the negative.

As an alternative ground for his decision the judge was of opinion that the recount was a nullity because of the registrars' failure to comply with certain requirements of § 135.

---

[1] The judge stated that there were forty-seven protested ballots but at the arguments before us counsel agreed that the number of such ballots was forty-six.

Accordingly he ruled that the vote as originally recorded should stand. For the reasons hereinafter discussed we are of opinion that this ruling was correct. In other words, the result below, if rested on the alternative ground, was right.

Section 135 requires that "A member of the board of registrars shall endorse over his signature on the back of each protested ballot the block number of which it is a part and the office [here the question] for which the vote is protested, together with the name of the candidate [here whether affirmative or negative] for whom the vote is counted." The registrars failed to comply with this provision.

Section 135 further provides that when the recount is complete the registrars, after enclosing all the ballots in their proper envelopes or containers, sealing the same, and certifying that this has been done, "shall likewise make and sign a statement of their determination of the questions raised." The registrars failed to comply with the quoted provision of the statute.

We are of opinion that the failure to comply with these provisions of § 135 invalidated the recount. "Proceedings for a recount of votes cast at an election are strictly statutory. They are of no effect unless authorized, begun and conducted as provided by the statute." *Swift* v. *Registrars of Voters of Milton*, 281 Mass. 264, 268. *Berardi* v. *Registrars of Voters of Milford*, 318 Mass. 748, 751. That is not to say that every failure to observe the requirements of the statutes would vitiate the recount. Doubtless there are provisions which may be considered as directory, and failure to comply with them is not a condition precedent to the validity of the recount. A case illustrative of this principle is *Clancy* v. *Wallace*, 288 Mass. 557, where it was held that a failure to count certain blank ballots, although the statute required it to be done, did not invalidate the recount. It was there said by Rugg, C.J., at page 566, "Statutory provisions as to elections must be interpreted on the theory that they are enacted to prevent fraud and mistakes and to secure freedom of choice. They are not to be so construed as

to make the right of voting and having the votes ultimately counted with accuracy subject to technical obstructions not affecting the merits of the election on ascertained facts." See in this connection *Swift* v. *Registrars of Voters of Milton*, 281 Mass. 264, 269; *Swift* v. *Registrars of Voters of Quincy*, 281 Mass. 271, 277.

The provisions of § 135 not observed by the registrars here cannot be said to belong to the class just discussed. The requirement that a "member of the board of registrars shall endorse over his signature on the back of each protested ballot the block number of which it is a part and the office [or question] for which the vote is protested, together with the name of the candidate [or vote on the question] for whom the vote is counted" cannot be said to be a mere formal requirement. Rather it is a requirement of substance, and is mandatory. It was obviously designed to lay the foundation for an efficacious review of the action of the registrars by the courts and of this class is the provision that the registrars "shall likewise make and sign a statement of their determination of the questions raised." Where there is no compliance with these provisions a court in reviewing the recount is obliged to do so on the basis of conflicting evidence. The present case affords a good illustration of the difficulties encountered where this is attempted. The interveners in their brief presented an elaborate argument, the gist of which was that if the protested ballots were all correctly counted the affirmative side of the question would prevail. But this argument depends upon acceptance of the interveners' version as to the disposition of the protested ballots on the recount. Their version was based upon the testimony of the secretary of the board of registrars and her testimony was based on certain records kept by her, and, in some instances, on her memory. On the other hand the petitioner, testifying also from memory and from records kept by his wife and his attorney, had a different version as to the disposition of some of the protested ballots. The trial judge on such evidence was able to determine how seventeen of the disputed ballots were counted but he stated he was unable to

make any finding with respect to the remainder.  If the statutory procedures had been followed the court would not have encountered this difficulty.  Here there were forty-six protested ballots.  In the next case there may be several hundred or even more.  That a satisfactory judicial determination of the results of a recount cannot be achieved in such circumstances on the basis of conflicting evidence is too obvious to be labored.  And it was for that reason, we think, that the provisions discussed above were placed in the statute.  The conclusion here reached does not, as the interveners contend, result in disfranchising the voters.  The right to a recount under the statutes "must be given all the protection accorded to it by the General Court.  But it does not mount higher than the election itself."  *Swift* v. *Registrars of Voters of Milton*, 281 Mass. 264, 269.  In holding that the original vote must prevail force and effect are given to votes which have once been counted and returned under all the sanctions provided by the election laws.

It follows the judgment must be modified so that the results of the election will be as recorded in the original returns, that is, 776 votes for the affirmative of the question and 778 for the negative, and, as so modified, it is affirmed.

*So ordered.*