JOSEPH D. EARLY *vs.* BOARD OF REGISTRARS OF VOTERS
OF WORCESTER.

Worcester.    October 17, 1962. — October 19, 1962.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & KIRK, JJ.

*Elections.*

Failure of registrars of voters to comply with the requirements of G. L.
c. 54, § 135, as amended, that upon a recount after an election a "mem-
ber of the board of registrars shall endorse over his signature on the
back of each protested ballot the block number of which it is a part and
the office for which the vote is protested, together with the name of the
candidate for whom the vote is counted," and that when the recount is
completed the registrars "shall . . . enclose all protested ballots in a
separate envelope, seal the envelope . . . and certify upon the envelope
that it contains all ballots that have been protested," nullified the recount
and the original count must stand; it was immaterial that there were
only six protested ballots and that there was no dispute as to the candi-
date for whom each was counted on the recount.

PETITION for a writ of mandamus filed in the Superior
Court on September 28, 1962.

Philip R. Kneeland was allowed to intervene.

The case was heard by *R. Sullivan,* J.

*Harry J. Meleski,* City Solicitor, for the respondent
board.

*Francis T. Mullin* for the intervener.

*Francis J. Cranston* for the petitioner.

SPALDING, J.    This is a petition for a writ of mandamus
alleging certain irregularities in the conduct of a primary
election recount.    Philip R. Kneeland, one of the candi-
dates, was permitted to intervene.    The evidence is re-
ported and the judge made a report of material facts.

Findings of the judge include the following: On Septem-
ber 18, 1962, a primary election was held for the purpose,
among other things, of nominating one Democratic candi-
date for the office of representative to the general court for
ward 9 in Worcester.    There were six candidates, and the
petitioner Early and the intervener Kneeland each received

more votes than any of the other candidates. According to the original tally the petitioner received 965 votes and the intervener received 950. Thereafter, the intervener duly petitioned for a recount. On September 26, a recount was conducted by the respondent board. During the recount six ballots were protested. These ballots were introduced in evidence and are before us. As a result of the recount the petitioner was credited with 959 votes and the intervener with 960. Thereupon, the petitioner brought this proceeding to compel the board to certify him as the nominee, alleging (1) improprieties in the conduct of the recount, and (2) erroneous tabulation of some or all of the six protested ballots.

The judge found that there was "not endorsed on the back of each of the six protested ballots over the signature of a member of the Board of Registrars the specific descriptive elements required by [G. L. c. 54, § 135]." He also found that the board failed to comply with the provisions of § 135 with respect to the envelope containing the protested ballots because there was "no certification that the envelope contained all of the ballots which were protested" and because the envelope "was completely unsealed." He further found that "various persons other than election officials had access to the protested ballots while kept in the unsealed envelope." The judge found and ruled that, except in the respects stated above, the recount was "conducted with proper notice to the parties and in accordance with [G. L. c. 54, § 135]." But the judge ruled that the failure of the board to comply with the provisions of § 135, in the respects stated above, invalidated the recount and that the original count was to stand. Accordingly, he ordered a writ of mandamus to issue granting the relief prayed for. From this order, the respondent board and the intervener appealed. See G. L. c. 213, § 1D, inserted by St. 1943, c. 374, § 4, and as amended by St. 1957, c. 155.

Section 135 of G. L. c. 54 (as amended through St. 1962, c. 264) provides, in part, that "A member of the board of registrars shall endorse over his signature on the back of each protested ballot the block number of which it is a part

and the office for which the vote is protested, together with the name of the candidate for whom the vote is counted." That section also provides that when the recount is complete the registrars "shall . . . enclose all protested ballots in a separate envelope, seal the envelope with a seal provided therefor and certify upon the envelope that it contains all ballots that have been protested." Neither of the quoted provisions was complied with.

We are of opinion the case at bar is controlled by *Felch* v. *Board of Registrars of Voters of Salisbury,* 336 Mass. 7. In that case there was noncompliance, as here, with the requirement that a "member of the board of registrars shall endorse over his signature on the back of each protested ballot the block number of which it is a part and the office for which the vote is protested, together with the name of the candidate for whom the vote is counted." We held that this provision was mandatory rather than directory and that failure to comply with it vitiated the recount.

The respondent board and the intervener earnestly urge that the case at bar is distinguishable. They point out that in the *Felch* case there were forty-six protested ballots and as to twenty-nine the judge was unable to determine how they were counted by the registrars on the recount. Here there were only six protested ballots and there is no dispute as to how these were counted. Doubtless the facts in the *Felch* case present a stronger case for the possibility of harm from the failure to comply with the statute. But this provision of the statute cannot reasonably be construed as directory on one set of facts and as mandatory on another. It was designed to ensure the integrity of recounts and to reduce as far as possible the opportunities for fraud or mistake. In a given case a strict application of the statute may operate harshly, but the legislative command is not to be set at naught by judicial exceptions to meet the exigencies of a hard case. If there are to be such exceptions they should be made by the Legislature. If it be argued that this construction enables a recount to be nullified because of the carelessness of a board of registrars, the answer is that the persons affected are not helpless. Section 135

affords them, their agents and counsel an opportunity to be present at the recount and to "watch and inspect the ballots, tally sheets and all other papers used in the recount, and to watch every individual act performed in connection therewith."

Since, for the reasons discussed, the recount was invalid, we do not reach the question whether it was invalid on other grounds.

*Order for judgment affirmed.*