ANTONIO ABBENE, JR. *vs.* BOARD OF ELECTION
COMMISSIONERS OF REVERE.

Suffolk. November 6, 1964. — December 9, 1964.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, KIRK, & REARDON, JJ.

*Elections. Words,* "Shall."

A recount after a city election was not nullified by the mere fact that
neither of two separate envelopes properly titled and sealed and ac-
tually containing together all the ballots protested at the recount bore
the certificate by the election officials required by G. L. c. 54, § 135, that
it contained all such ballots.

PETITION for a writ of mandamus filed in the Superior
Court on December 2, 1963.

Anthony C. Moschella was allowed to intervene.

The case was heard by *Kalus,* J.

*Marvin H. Siegel* for the petitioner.

*Americo L. Ferullo (Joseph M. Szabo* with him) for the
intervener, Anthony C. Moschella; *Ralph F. Martino,* City
Solicitor, for the Board of Election Commissioners of
Revere, also with him.

REARDON, J. This is a petition for a writ of mandamus
brought against the board of election commissioners of the
city of Revere (respondent) alleging certain irregularities
in an election held in that city on November 5, 1963. Leave
to intervene was granted to one of the candidates, Anthony
C. Moschella (intervener). The case was reserved and re-
ported by a judge of the Superior Court, who made certain
findings of material facts and rulings.

The facts found by the judge are essentially as follows.
The election was duly held to elect six members of the
school committee. The names of twelve candidates ap-
peared on the ballot, including those of the petitioner and
the intervener, and the voter was entitled to vote for six.
At the close of the election the respondent made a return

that the intervener had received a total vote of 4,685 and was thereby elected as the sixth member of the school committee, while the petitioner, with a total vote of 4,657, had run seventh in the field of twelve and thus was not elected. The petitioner seasonably requested a recount which was held. The return of the respondent on the recount indicated 4,671 votes for the intervener and 4,637 votes for the petitioner. ''During the recount, workers on behalf of the petitioner challenged and protested 39 ballots . . . . These workers also 'questioned' 56 other ballots . . ., and asked the respondent for permission to have these latter ballots inspected personally by the petitioner who was not then present but who was expected shortly. The respondent agreed that this would be done and made a public announcement to that effect, whereupon the intervenor objected to this procedure. The petitioner appeared shortly after all of the ballots had been recounted and upon an inspection of the ballots . . . ['questioned'] he protested the same. . . . The respondent caused the ballots originally protested . . . to be enclosed in an envelope upon which it marked 'Protested Ballots Original', [and] sealed the same, which seal contained the following printed legend: 'Envelope open[ed] and sealed again in conformity to the law.' . . . The petitioner and the intervenor (and one other candidate) also signed this envelope after the same was sealed as aforesaid. . . . As to the ballots 'subsequently protested' by the petitioner . . ., the respondent placed these ballots in a separate envelope on which . . . [it] marked 'Protested Secondarily', sealed the envelope, which seal contained the same legend'' as that on the seal of the first envelope. Three of the election commissioners signed this second envelope. Neither envelope contained any certification by the respondent that it contained all ballots that had been protested although in fact all protested ballots were contained in one or the other of the envelopes.

The judge found fraud in the marking of twenty-two ballots for the intervener in that group which was protested by the petitioner's workers and in the marking of thirty ballots

for the intervener in the group protested by the petitioner himself in that ''some election official falsely and fraudulently did mark crosses opposite the name of the intervenor after the voter in each of these ballots had cast the same without a vote for the intervenor.'' In five other ballots, two in the first group and three in the second, the judge found that ''some election official did falsely and fraudulently mark a cross for the intervenor after the voter had cast his ballot for six other candidates, including the petitioner, but not for the intervenor, and thereby falsely made it appear that the voter had voted for seven candidates, causing the respondent to void these five ballots.''

Pursuant to these findings, the judge ordered that fifty-two votes be deducted from the total of the intervener and that five votes be added to that of the petitioner, making the reconstituted total 4,642 for the petitioner and 4,619 for the intervener.

The intervener contends that the court has no jurisdiction to consider the recount since the respondent failed to conduct the recount in accordance with G. L. c. 54, § 135. The judge has reported the matter principally on the question of whether the failure to comply requires dismissal of the petition.

We treat the ballots in question which are before us as exhibits as having been incorporated by reference in the findings of the judge. It is apparent from our examination of them that there was a basis for the finding that they were fraudulently marked.

General Laws c. 54, §§ 134–137, establish the procedures for the recount of votes in a contested election. The prescribed process is wholly statutory, being unknown at common law. *Eldridge* v. *Selectmen of Chatham,* 192 Mass. 409, 411. *Swift* v. *Registrars of Voters of Milton,* 281 Mass. 264, 268. That part of G. L. c. 54, § 135, which provides that the election officials ''shall . . . enclose all protested ballots in a separate envelope, seal the envelope with a seal provided therefor and certify upon the envelope that it contains all ballots that have been protested'' (certifica-

tion provision) was before the court in *Early* v. *Registrars of Voters of Worcester,* 345 Mass. 47. In the *Early* case not only had the board failed to comply with the requirements for certification on the envelope containing all the ballots protested but the envelope itself "was completely unsealed. . . . [V]arious persons other than election officials had access to the protested ballots while kept in the unsealed envelope." P. 48. The court was of opinion that it was controlled by *Felch* v *Registrars of Voters of Salisbury,* 336 Mass. 7, where there was noncompliance with that provision of G. L. c. 54, § 135, which requires a member of the board of registrars to ". . . endorse over his signature on the back of each protested ballot the block number of which it is a part and the office for which the vote is protested, together with the name of the candidate for whom the vote is counted." P. 49.

In the present case, while there was a failure to comply strictly with the certification provision of the statute, there was nonetheless such a substantial compliance as to place before the court in two sealed envelopes all protested ballots, thus satisfying the objective of the statute. "[T]he underlying aim of all statutory interpretation . . . is to discern the legislative intent disclosed by the enactment as an entirety in the light of its dominant purpose *and to declare its appropriate application to [the] particular facts. The regnant design of all election laws is to provide expeditious and convenient means for expression of the will of the voters free from fraud.* The right to vote is a precious personal prerogative to be sedulously guarded. Arts. 4, 7, 8, 9 of the Declaration of Rights. The public welfare demands that elections be protected from fraud" (emphasis supplied). *Swift* v. *Registrars of Voters of Quincy,* 281 Mass. 271.

It has been argued that the use of the word "shall" in the statute imposes the requirement of strict compliance with the prescribed formalities. In this instance we hold that there was sufficient compliance with the statute. We are much persuaded by the observation of Judge Learned

Hand that "it is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary; but to remember that statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning." *Cabell* v. *Markham*, 148 F. 2d 737, 739 (2d Cir.).

A peremptory writ is to issue commanding the respondent board of election commissioners to certify that upon recount 4,642 votes were cast for the petitioner and 4,619 for the intervener, and that the petitioner was elected to the school committee.

*So ordered.*